W. C. BALLARD ET AL. v. G. W. E. CARMICHAEL ET AL.

No. 6923.

**1. New Cause of Action—After-Acquired Title.**—It has been too often ruled, that the plaintiff may at any time before trial abandon the old and set up by amendment a new cause of action, to require the citation of authority to support the proposition. In such case the plaintiff makes himself liable to pay all costs which have accrued up to the time of the amendment. This applies to an after-acquired title to land sued for.

**2. Same—Practice.**—In case the plaintiff abandons the original and amends by setting up a new cause of action, and the defendants are in court by answer, no process is required; but in all other respects the action proceeds the same as a new suit.

**3. Same—Trespass to Try Title.**—The rule is elementary that a plaintiff can not recover in trespass to try title upon a title acquired subsequently to the institution of the suit. But we can not see why he should not be permitted to renew his action by amendment and thus place himself in position to avail himself of his after-acquired title. After such amendment such title is relevant and admissible to establish such new cause of action or title.

**4. Contract Construed—Ancient Instrument—Land Warrants.**—On the trial, September, 1888, in support of his title the following document was read: "Received of James Johnston $323.27 in full for our interest in the land warrants John F. Morgan, deceased, was entitled to in Texas, we being the only surviving heirs, which we transferred to said Johnston the 3d day of this month. April 5, 1850. [Signed] John Fipher, Eleanor Fipher." The deceased was an unmarried soldier immigrant, who fell with Fannin at Goliad. His heirs were entitled to a headright third of a league, bounty and donation warrants. *Held:*

1. That the instrument must be construed as embracing all claims for land to which the subscribers were entitled as the heirs of Morgan—headright, bounty, and donation certificates.

2. The paper was an ancient instrument, and so admissible without proof.

3. The instrument was not a conveyance, but a receipt containing a distinct admission that the makers had transferred the warrants to Johnson for a valuable consideration, on a day anterior to that on which the writing was made.

4. Such receipt was sufficient evidence to support a finding that the headright certificate had been in fact transferred.

**5. Conveyance of Wife's Separate Property Under Act of April 30, 1846.**—Under the Act of April 30, 1846, the wife could convey her separate personal property (other than slaves) by parol executed contract. Unlocated land certificates, the separate property of the wife, could be conveyed without writing subscribed and privy acknowledgment.

**6. Cases Discussed and Limited.**—Hollis v. Francois, 5 Texas, 195; Taylor v. Hall, 20 Texas, 211; Gregory v. Van Vleck, 21 Texas, 40; Tucker v. Carr, 39 Texas, 98; Railway v. Durrett, 57 Texas, 51; Groesbeck v. Bodman, 73 Texas, 287; Utzfield v. Bodman, 76 Texas, 359, discussed and limited.

**7. Dicta Not Authoritative.**—The utterances of a court in order to have the authority of judicial precedents must be asserted in the determination of some question necessarily involved in the case.

**8. Statute Construed—Conveyance of Wife's Estate.**—Article 1008, Paschal's Digest (Act April 30, 1846), merely provided that a writing purporting to convey the wife's separate estate shall be invalid unless accompanied by a certificate of her privy acknowledgment. It does not declare that such conveyance should be in writing.

9. **Same—Statute of Frauds.**—The statute of frauds, enacted in 1840 (Pasch. Dig., art. 3875), provided that all contracts for the sale of lands and slaves in order to be enforceable in the courts should be in writing and signed by the party to be charged thereby. The conveyance of the effects of the wife other than lands and slaves was not affected by this statute.

10. **Conveyance of Wife's Separate Chattels.**—Under Act of April 30, 1846, the wife's conveyance of her personal property in writing to be valid should be accompanied by the certificate of her privy acknowledgment. It does not follow that she could not make a verbal transfer of such property. Such transfer is not prohibited either expressly or by implication. See discussion.

11. **Same.**—Where the law permits the wife to take and hold property in her own right, it is generally held that she can transfer it as a feme sole unless restrained by legislation, and it is held that the wife could sell unlocated land warrants without writing and her privy acknowledgment.

12. **Case Adhered to—Deputy Clerk.**—Herndon v. Cheek, 82 Texas, 146, adhered to, that a deputy clerk may take and certify proof or acknowledgment of a deed without naming his principal. He acts by virtue of his own office under the law.

13. **Irrelevant Testimony.**—The court properly excluded a deed to defendant, the grantor not having been shown to have had any interest in the land.

14. **Equity Outstanding.**—The chain of title exhibited by plaintiffs in trespass to try title disclosed that other parties had an equitable interest in the land. *Held*, that such equity could not be set up in defense by a defendant not owning the same.

15. **Parol Evidence of Sale of Land.**—Where parol testimony to a sale of land was given without objection and is undisputed the court on appeal will consider the sale as proved.

16. **Practice in Trespass to Try Title.**—We know of no rule which precludes a defendant, who is a trespasser when the suit is brought, from buying up an outstanding title to or an equity in the land, and setting it up as a defense or as a basis for affirmative relief. It was error for the trial court to disregard evidence of a sale of the land in controversy by one defendant to another.

17. **Same—Partition.**—Neither party having asked partition in the pleadings, it was not error to refuse partition. The plaintiff upon establishing title to a part interest in the land sued for was entitled to judgment placing him in possession as cotenant.

18. **Disclaimer—Costs.**—Plaintiffs in trespass to try title sought recovery of an entire tract. The defendants contested the rights of plaintiffs to the entire tract. Upon recovery by plaintiffs of part they were entitled to their costs. Defendants not having disclaimed, upon failure to defeat the plaintiffs were subject to costs.

19. **Conveyance by Corporation—Vice-President.**—When a deed is produced purporting to be by a corporation and signed by its vice-president and sealed with its seal, we think, in the absence of evidence to the contrary, it should be presumed that the contingency has arisen which authorized the vice-president to act, and that he is to be deemed pro hac vice the presiding officer of the corporation.

20. **Case Adhered to—Acknowledgment of Deed by Officer of Corporation:**—Muller v. Boon, 63 Texas, 91, adhered to, in interpretation of article 600, Revised Statutes, touching the form of acknowledgment required to a deed from a corporation executed by its officer.

21. **Variance.**—Land was conveyed to "The Ranger Cattle Company of Throckmorton County." A conveyance was offered by the Ranger Cattle Company of Shackelford County and signed by the president and secretary and sealed with seal bearing the words, "Ranger Cattle Company, Throckmorton County, Texas." *Held*, over objection, in absence of testimony that there were two companies, it will be presumed

that there was a misnomer or misdescription, and which would not defeat the conveyance.  Rev. Stats., art. 598.

22.  **Reconvention.**—Where in trespass to try title the defendant sets up title to part of the land, to entitle him to affirmative relief he must prove the facts constituting this title, and as to such facts the burden is upon him.  See example.

APPEAL from Haskell.  Tried below before Hon. J. V. COCKRELL.  No statement is necessary.

*A. C. Foster* and *Alexander, Winter & Campbell*, for appellants.—1.  Plaintiffs can not maintain their suit by relying on after-acquired titles.  Bradford v. Hamilton, 7 Texas, 55; Simpson v. McLemore, 8 Texas, 448; Teal v. Terrell, 48 Texas, 491.

2.  After the passage of the Acts of 1840 and 1846, and prior to the Revised Statutes of 1879, all instruments of writing purporting to be a conveyance of any estate or interest in lands, slave or slaves, or "other effects" the separate property of the wife, were required to be acknowledged by the wife privily and apart from her husband.  Hart. Dig., arts. 174, 176; Const. 1845, sec. 19, art. 7; Tucker v. Carr, 39 Texas, 98; Callahan v. Patterson, 4 Texas, 61; Hollis v. Francois, 5 Texas, 200, 201; Railway v. Durett, 57 Texas, 51; Taylor v. Hall, 20 Texas, 211; Gregory v. Van Vleck, 21 Texas, 40; 3 Ct. App. C. C., sec. 11.

3.  This assignment of error involves the construction of the paper dated April 5, 1850.  [See opinion.]  The only facts that can be clearly deduced from said paper are, that the Fiphers had, on April 3, 1850, transferred to James Johnston certain land warrants which John F. Morgan was entitled to in Texas, in consideration of the sum of $323.27.  The paper does not undertake to say that the money was paid in consideration of all the land warrants of Morgan, but in consideration of those "which" they had transferred to him on April 3, 1850, and plaintiffs have not shown whether the transfer was only for two or all of the certificates of said Morgan, and if for two only, which two of them.

4.  The party who wrote the contract and was the author of an ambiguity has the burden of explaining it, when he seeks to take the benefit of a construction favorable to himself; and if he does not clear up the meaning without doubt, judgment must be given against him.  Morgan was entitled to two "warrants" and one "headright" certificate.  Ours was the headright.  For authority on the question that "headright certificates" are not "land warrants," see Rev. Stats., art. 3871–3879; Hill v. Kerr, 78 Texas, 213; Noonan v. Bradley, 9 Wall. (U. S.), 394.

5.  Under our laws the words "land certificate" is a generic term denoting any and all kinds of certificates, comprising headrights, augmentations, bounty warrants, donation warrants, land scrip, railway and

river and canal and ditch certificates; but the words "land warrants" is a species of the above genus, and can include only two kinds, donation "warrants" and bounty "warrants;" and the title to a "headright" certificate will no more pass under a conveyance of "warrants" than would a headright pass by sale of all the "land scrip" or "railway certificates" or "river certificates" that one might be entitled to in Texas, unless such special and limited term was shown by parol evidence or the surrounding circumstances to have been intended by the parties using it to be used in a broader and more comprehensive sense, and to include every kind and character of certificate owned by the parties in Texas.    Rev. Stats., arts. 3871–3880.

6.    Plaintiffs' right to the land resting alone upon the admission contained in the paper dated April 5, 1850, that the Fiphers had two days before transferred to Johnston certain land certificates, it gave said Johnston a mere equity in the land, which must be asserted in ten years or the claim will become stale.

7.    Any instrument to be entitled to consideration as an ancient instrument must purport to be itself a conveyance of the property made at the time of the transaction, so as to be a part of the res gestæ, and not a mere narrative or admission of said transaction.    1 Greenl. Ev., 13 ed., sec. 144.

*Ed. J. Hamner,* for appellees.—The brief of Mr. Hamner did not come to the hands of the Reporter.

OPINION ON REHEARING.

GAINES, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by the appellees against the appellants, W. C. Ballard and John Labriere, for the recovery of a tract of 1476 acres of land, patented to the heirs of John F. Morgan.    The trial was had before the court without a jury, and resulted in a judgment for plaintiffs for an undivided interest of seven-twelfths in the land, and for the defendant Labriere for an undivided interest of five-twelfths.    All parties complain of the judgment.

We will first dispose of appellants' assignment of errors.

The original certificate by virtue of which the land was patented was issued to the heirs of John F. Morgan.    The plaintiffs' original chain of title under the patent consisted, first, of an alleged transfer of the original certificate by Eleanor Fipher, sole heir of Morgan, to one James Johnston; second, deed from the executors of the will of James Johnston to S. J. T. Johnston, made by virtue of a power contained in the will; third, deed from S. J. T. Johnston to John Carmichael. The plaintiffs were heirs of John Carmichael, and had a conveyance from A. G. Carmichael and J. A. D. Carmichael, who, we presume,

were the only other heirs. The proof seems defective as to the heirship of the two persons last named, but no point is made upon it in the brief of appellants.

The plaintiffs also introduced in evidence deeds from all the heirs of James Johnston to themselves to the land in controversy. These deeds recite, in effect, that they were made for the purpose of confirming the sale and conveyance by the executors of the will of James Johnston to S. J. T. Johnston. But they were made after the suit was instituted, but before the filing of the amended petition. They also introduced in evidence a deed from S. J. T. Johnston to themselves to the land in controversy, which recites, in effect, that it was for the purpose of making good his deed to John Carmichael. This deed was also executed after the commencement of this suit.

For the purpose, as we presume, of availing themselves of this after-acquired title, the plaintiffs, subsequent to the date of the deeds last named, filed an amended petition, in which they alleged, first, a trespass by the defendants on a day anterior to the filing of the original petition, and then another as of a date subsequent to that of the confirmatory conveyances.

The defendants excepted to the amended petition, on the ground that it alleged a trespass subsequent to the institution of the suit. The court overruled the exception, and we think that the ruling was correct. Our system of pleading permits the utmost liberality of amendment, and it has been too often ruled that the plaintiff may at any time before the trial abandon the old and set up by amendment a new cause of action to require the citation of authority to support the proposition. In such a case, the plaintiff makes himself liable to pay all costs which have accrued up to the time of the amendment, and if the parties defendant are in court by answer no service of process is required of them; but in all other respects the action proceeds precisely the same as a new suit. And we see no reason why a plaintiff may not set up new grounds of recovery which have occurred since the beginning of his suit without abandoning his original cause of action. Should he fail, however, upon his original cause of action, but recover upon the new, he should as a rule be adjudged to pay all costs that had accrued up to the time the amendment was filed.

In connection with the assignment of error upon the action of the court in overruling the demurrer to the amended petition, the appellants submit another, which is upon its ruling in admitting in evidence the deeds executed after the suit was brought. It was doubtless for the purpose of admitting the after-acquired title that the amendment was filed. The rule is elementary that a plaintiff can not recover in trespass to try title upon a title acquired subsequent to the institution of the suit. But we can not see why he should not be permitted to renew his action by amendment, and thus place himself in position to

avail himself of his after-acquired title. Collins v. Ballow, 72 Texas, 330. The same reasons exist for permitting a new cause of action to be set up after suit in this class of cases which obtain in other cases. The rule as applied in our courts guards every right of the defendant, and tends to save expense and time and to bring the real matters in issue between the parties to a speedy determination. As we regard the amended petition in this case, it alleged the original cause of action, and in addition thereto one which accrued after the suit was brought and before the amendment was filed. This, as we have seen, the plaintiffs had the right to do; and it follows that they had also the right to establish their case by proving any title which they had acquired before the date of the amendment.

It was proved that Eleanor Fipher was the sister and sole heir of John F. Morgan. During the trial the plaintiffs were permitted to read in evidence, over the objections of the defendants, an instrument in writing of which the following is a copy:

"Received of James Johnston $323.27 in full for our interest in the land warrants John F. Morgan, deceased, was entitled to in Texas, we being the only surviving heirs, which we transferred to said Johnston the 3d day of this month. April 5, 1850.

[Signed]                                "JOHN FIPHER,
                                        "ELEANOR FIPHER."

To the introduction of the writing sundry objections were interposed. The objection among others was urged, that it did not describe the certificate by virtue of which the land in controversy was patented. The certificate was for one-third of a league, and was such as was issued to an immigrant who was not the head of a family. Morgan having been not only an immigrant, but also a soldier in the war of the Texas revolution, and having fallen at Goliad, his heirs in addition to that certificate became entitled to what are known as bounty and donation warrants, which were also issued. But we are of opinion that the evidence of the right to land now in question, though commonly known as a certificate and so designated in the statutes, was to all intents and purposes a land warrant; and that the admission in the receipt under consideration is to be construed as embracing all claims for land to which the subscribers were entitled as the heirs of Morgan. Land warrants and land certificates are in a general sense and in legal effect the same.

The receipt was also objected to upon the ground that it was not privily acknowledged by Eleanor Fipher in the manner provided by law for the conveyance of the property of married women. If the instrument purported to be a conveyance of the certificate, we are of the opinion that the objection would have been well taken. But it is not a conveyance, but a receipt containing a distinct admission that the

parties who signed it had transferred the warrants to Johnston on a day anterior to that on which the writing was executed. We see no reason, therefore, why it may not be received in evidence to prove the fact admitted—provided, always, that such fact be capable of proof by admission and relevant to the issue to be determined. If the certificates could have been transferred only by writing duly signed by Fipher and his wife and acknowledged by her in the mode provided by our laws for the conveyance in writing of her separate property, it should probably be held that the admission contained in the receipt in question was not competent proof of the fact. But the certificate at that time had never been located, and it was then personal property. The question therefore arises, Could the wife convey her personal property except by writing duly acknowledged under the statute? Upon that question we have found no authoritative decision of this court; but if we should be guided by expressions found in numerous opinions of the court, we should be constrained to answer the question in the negative. A brief reference, however, to the cases in which the doctrine has been announced, that under the Act of April 30, 1846, a writing with the privy acknowledgment of the wife was necessary to a conveyance of her personal property other than slaves, will show that the utterances of the court upon the question were not called for in determining the issues involved. There are many cases in which it has been said in general terms that the title to the wife's property will not pass without a privy acknowledgment, but they involved the title to land, and need not be reviewed. We shall notice only those in which it has been distinctly announced that such an acknowledgment was essential to the conveyance of her personal property.

In Hollis v. Francois, 5 Texas, 195, the question involved was the validity of a mortgage duly executed and acknowledged upon the wife's slaves, and clearly there was no controversy before the court as to the right of the wife to sell her personal property other than slaves by a contract not in writing.

Taylor v. Hall, 20 Texas, 211, was a suit brought by the husband and wife for the recovery of damages for the conversion of certain cattle, the separate property of the wife. The defense was, that the husband and wife had signed a contract in the form of a promissory note, in which they promised to deliver one hundred cattle; that he had staked and lost it to defendant on a horse race, and that defendant had driven the cattle away with the knowledge and consent of the plaintiffs. It was held that the court below correctly excluded evidence to establish the defense. For reasons which will hereafter appear, we think the written promise was a nullity.

Gregory v. Van Vleck, 21 Texas, 40, involved the question of the validity of a verbal sale by the wife of a slave which was her separate

property.   As we shall hereafter see, such a sale was required by the statute of frauds to be in writing.

Tucker v. Carr, 39 Texas, 98, was a suit by the husband and wife to recover personal estate alleged to be the separate property of the wife, which had been sold by the husband.   The property was acquired during the coverture of the plaintiffs by a bill of sale executed to the wife. The court below evidently took the view, that since the bill of sale showed title prima facie in the community, a bona fide purchaser from the husband alone could hold the property, and in effect so charged the jury.   The court was also asked to charge, in substance, that the husband had no right to sell the wife's separate property.   This instruction was refused.   The propositions involved in the instruction given and that refused were the questions before the court upon the appeal, and it is evident that the question of the right of the wife to sell her separate property by a verbal sale, with the consent of her husband, was not raised.   The court, however, in the opinion discuss that question, and undertake to decide that she could not do so.

The point decided in Railway v. Durrett, 57 Texas, 51, was, that the husband alone did not have the power to convey a perpetual easement in the wife's land.

In Groesbeck v. Bodman, 73 Texas, 287, and in Utzfield v. Bodman, 76 Texas, 359, there was a purported conveyance in writing by the husband and wife of certain land certificates the property of the wife. But it was shown that the certificates had already been located upon the land in controversy; and there being no privy acknowledgment of the wife, it was held that the conveyance was invalid.   The effect of the conveyance if valid would have been to transfer the title of land and not of personal property.

The utterances of a court in order to have the authority of judicial precedents must be asserted in the determination of some question necessarily involved in the case before it; and tested by this rule, we confidently assert that in none of the cases referred to has the point now before us been passed upon in an authoritative manner.   We therefore consider it an open question.

In construing the Act of April 30, 1846, concerning the conveyance of the property of married women, we think our courts have proceeded upon a radical misconception of its terms.   As an example, we may remark that they seem to have acted upon the assumption that the legal effect of the language employed was the same as if it had read like the provision of the Revised Statutes which has been substituted therefor, and which reads as follows:   "The husband and wife shall join in the conveyance of real estate, the separate property of the wife; and no such conveyance shall take effect until the same shall have been acknowledged by her privily and apart from her husband," etc.   Rev. Stats., art. 559.   But the language of the Act of April 30, 1846, is ma-

terially different. It is as follows: "That when the husband and wife have signed and sealed any instrument purporting to be a conveyance of any land, slave or slaves, or other effects, the separate property of the wife, or of the homestead of the family, or other property exempt by law from execution, if the wife appear before any judge of the Supreme or District Court or notary public, and being privily examined by such officer, apart from her husband, shall declare that she did freely and willingly sign and seal the said writing to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon said judge or notary shall certify such privy examination, acknowledgment, and declaration under his hand and seal, by a certificate annexed to said writing to the following effect or substance, viz.: [Here follows form of certificate.] But any certificate showing the requisites of the law have been complied with shall be as valid as the form here prescribed; and such deed or conveyance so certified shall pass all right, title, and interest which the husband and wife, or either of them, may have in and to the property therein conveyed." Pasch. Dig., art. 1003.

The article quoted from the Revised Statutes substantially provides, that the purported conveyance shall be void unless accompanied by a certificate of the privy acknowledgment of the wife. The Act of 1846 does not expressly so declare, but as to all attempted written conveyances its legal effect in our opinion is the same. If in writing, the conveyance when accompanied by a proper certificate of privy acknowledgment was valid; when not so accompanied, it was void. The language of the Revised Statutes is, however, mandatory to the effect that the husband and wife shall join in a conveyance of her real estate, and that without the certificate of her privy acknowledgment it should be of no effect. But the Act of 1846 merely provides, that a writing purporting to convey her separate estate shall be invalid unless accompanied by a certificate of her privy acknowledgment; it does not declare that such conveyance shall be in writing. But it does not follow that a written conveyance was not necessary to pass title to the wife's lands or slaves. There was then in existence a more general statute, which made a writing necessary for this purpose. The statute of frauds, passed in 1840, provided, that all contracts for the sale of lands and slaves in order to be enforceable in the courts should be in writing, and should be signed by the party to be charged thereby. Pasch. Dig., art. 3875. The conveyance of "the effects" of the wife other than lands and slaves was not affected by the statute of frauds, and in our opinion the sale or transfer of such effects was not regulated by the Act of April 30, 1846, except in cases where the evidence of such sale or transfer was in writing. We think, therefore, the able jurists who compiled our Revised Statutes were in the main correct in saying

in their report, that "the form of conveyancing had not been changed in any material respect," except as to certain articles which had been supplied (2 Sayles' Civ. Stats., p. 719), although the article heretofore quoted clearly shows that they intended to require a privy examination of the wife only in case of a conveyance of her real estate.   Rev. Stats., art. 559.   We think, however, that in one particular they have narrowed the scope of the former law.   The article last cited places no restriction upon the conveyance of the wife's personal property, while the old law did not permit it to be conveyed in writing unless the writing was duly acknowledged by the wife before an officer, and that acknowledgment certified to by him.   But while it is true that that law required the wife's conveyance of her personal property, if in writing, to be accompanied by her privy acknowledgment, it does not follow that she could not make a verbal transfer of such property. Such transfer is not expressly prohibited, and we think no implied prohibition upon her power was intended.

It seems to us it was the purpose to protect the wife in retaining her property against the coercion, fraud, or undue influence of her husband.   One of the most effectual modes by which he, in the absence of a prohibitory law, could bring about a transfer of her property against her will would be to procure her signature to a written conveyance. If procured by force or fraud, under the law as it then stood, which prohibited the parties to a suit to testify in their own behalf, in many cases of that character proof of fraud or coercion would be impossible. More publicity would usually attend a verbal sale by the wife herself, and if undue influence were exercised by the husband it would be more capable of proof.

One of the most valuable incidents of the right of property is the power to dispose of it; and it is held, that the power in the absence of statutory restrictions ordinarily accompanies the right.   When the law permits the wife to take and hold property in her own right, it is generally held that she can transfer it as a feme sole, unless restrained by legislative enactments.   Personal effects for which she has no use would become valueless without a power to sell them; and it seems to us that a law that would require a writing and privy acknowledgment to effect the transfer of insignificant articles of personal property belonging to her would be unreasonable and unjust.   For these reasons we think that the Act of 1846 was not intended to prohibit a parol transfer of her personal effects other than slaves, although it did provide, that if a written transfer was attempted it should be ineffectual unless acknowledged and certified to as therein provided.

As we have said, the receipt under consideration is not a transfer of the certificate; but it contains a clear admission that before its date John and Eleanor Fipher, for a valuable consideration, had sold the

warrants to James Johnston. The admission was amply sufficient to sustain the court's finding that the certificate had been in fact transferred.

It is also complained, that the court erred in admitting in evidence the receipt as an ancient instrument; because (1) it was not shown that it came from the proper custody; (2) because the instrument was not of that dignity that permitted its introduction as an ancient document; and (3) because of circumstances in evidence which threw suspicion upon it. It appears from the bill of exceptions that none of these objections were interposed in the court below, and they can not be urged for the first time in this court. If the objections had, however, been taken, we are of opinion that the receipt should have been admitted.

The appellants also complain of the introduction in evidence of the will of James Johnston, and of the deed from the executors of that will to S. J. T. Johnston. Whether there was error or not in these rulings we think immaterial, for the reason that the plaintiffs introduced deeds to themselves to the land in controversy from all the heirs of James Johnston. If error, it would probably be material upon the question of the costs which accrued before the filing of the amendment; but that question is not presented on this appeal. The same may be said as to the deed from S. J. T. Johnston to John Carmichael. Johnston's subsequent deed to plaintiffs would have cured any defect that existed in his first deed, though we think none existed. The first deed sufficiently described the land, and was properly acknowledged before the deputy county clerk, and the acknowledgment duly authenticated by that officer. Herndon v. Cheek, 82 Texas, 146.

There was no error in the refusal of the court to permit the defendant W. C. Ballard to read in evidence a deed to himself from J. D. Ballard. It was not shown that J. D. Ballard had any title whatever to the land in controversy.

It is insisted also, in effect, that the court erred in rendering judgment for the plaintiffs for any part of the land in controversy, because it was shown by the deeds under which they claim that the land was conveyed by the executors of James Johnston to S. J. T. Johnston, and by S. J. T. Johnston to John Carmichael, and by the heirs of James Johnston and S. J. T. Johnston to plaintiffs, subject to the contracts of James Johnston with one Mitchell and one Yoakum. All the deeds named contained the recital that the land was conveyed subject to the contract named above. We are of opinion that the court did not err in admitting the evidence. The recitals in the deeds indicate that at one time at least there existed an equity in favor of Mitchell and Yoakum. But with this equity the defendants do not connect themselves; and in such case it is settled that the defendant in an action of trespass to try title can not set up in defense an outstanding equitable claim to which he shows no right.

It is also insisted, that the court erred in rendering judgment for the defendant Labriere for five-twelfths of the land sued for and that defendant Ballard take nothing, because the proof showed that the former since the institution of the suit had sold all his interest in the land to his codefendant and had placed him in possession. The deed from Labriere to Ballard, which was the best evidence of the sale, was excluded by the court, and we can not look to it as evidence in the case. But each of them swore to the fact of the sale without objection on part of the plaintiff, and their testimony was not disputed. It must therefore be deemed an established fact. If Ballard had not been a party to the suit, his purchase after suit brought would, as a general rule, have given him no right to intervene and to claim a judgment for any part of the land. But being a party defendant, no reason suggests itself to our minds why the rights of defendants as between themselves should not be adjusted, although such rights were acquired while the litigation was pending. We know of no rule which precludes a defendant who is a trespasser when the suit is brought from buying up an outstanding title to or an equity in the land and setting it up as a defense to the action or as a basis for affirmative relief. We think the judgment in this respect ought to be reversed. It should have been in Ballard's favor for so much of the land as Labriere had title to at the time of the conveyance from Labriere to him. We do not decide, however, that the judgment as it stands, in so far as it is a judgment in favor of Labriere, would not inure to the benefit of Ballard. That question we need not determine.

There was no error in refusing to enter a judgment for a partition. Neither party specially prayed for that relief, and the plaintiffs were entitled to a judgment of recovery for such interest in the land as they established by their evidence, and for a writ of execution commanding the sheriff to place them in possession with the defendant, their cotenant. The judgment as here rendered will be made to conform to this view. If defendants had disclaimed as to the interest in the land to which they were not entitled, they should have recovered their costs. But having defended as to the whole, and plaintiffs having recovered an undivided interest, the costs were properly adjudged in favor of the latter.

What has been said disposes of the meritorious questions raised by appellants' assignments of error. But appellees have filed cross-assignments which demand consideration.

The defendants claimed title through one Mrs. Hendrickson, who was proved to be a granddaughter of Eleanor Fipher. They introduced in evidence a deed from Mrs. Hendrickson and her husband to the Ranger Cattle Company, of Throckmorton County, to an undivided half-interest to the land in controversy; also a deed purporting to be a conveyance from the Ranger Cattle Company, of Shackelford County, to

defendant Labriere to that half-interest. This deed was signed by one Hinsley as vice-president, and by one Bartholomew as secretary and treasurer of the company, and had affixed thereto a seal which bore upon it the words, "Ranger Cattle Company, Throckmorton County, Texas." The appellees objected to the introduction of the deed, substantially upon two grounds; first, because it was not signed by "the president or presiding member or trustee" of the corporation, and because no reason was shown why the president did not sign; and second, because "the acknowledgment did not appear to be the act of the Ranger Cattle Company, of Shackelford County, nor was it acknowledged by the parties signing the same as the act of the corporation purporting to convey the land."

We will first consider the first ground of objection. Article 600 of our Revised Statutes provides, that "Any corporation may convey its lands by deed sealed with the common seal of the corporation and signed by the president, presiding member, or trustee of said corporation; and such deed when acknowledged by such officer to be the act of the corporation, or proved in the manner provided for other conveyance of lands, may be recorded in like manner and with the same effect as other deeds." We may safely assume to know judicially that a vice-president in the common acceptation of that term is an officer designated for the purpose of performing the functions of the president when for any reason the latter can not act. In case of the absence of the president or of his inability for any reason to perform the functions of his place, as a very general rule, at least, the vice-president becomes invested with his powers and responsibility. In such contingencies the vice-president is in fact and in law the president in all except the name. He certainly becomes "the presiding member" of the corporation. When, therefore, a deed is produced signed by the vice-president of the corporation and sealed with its seal, we think in the absence of evidence to the contrary it should be presumed that the contingency has arisen which authorized the vice-president to act, and that he is to be deemed pro hac vice the presiding member of the corporation. The only cases we have found bearing upon the question are in consonance with these views. Coleman v. Oil Co., 25 W. Va., 172; Smith v. Smith, 62 Ill., 493. In the latter case the Supreme Court of Illinois, in speaking of the president of a corporation, say: "When an act pertaining to the business of the company is performed by him, it will be presumed the act was legally done and binding upon the company; and as a general rule, in the absence of the president the vice-president may act in his stead and perform the duties which devolve upon the president." And we think the like presumption in absence of direct evidence to the contrary should be indulged in favor of the validity of his acts, especially when such acts are authenticated by the seal of the corporation.

That the objection to the certificate of acknowledgment was not well taken has been directly decided by this court. Muller v. Boone, 63 Texas, 91. It was there held, that an acknowledgment by the officer that he executed the deed for the purposes therein expressed was equivalent to acknowledging that it was the act of the corporation, when the deed purports to be the act of the corporation. The reasons for this ruling are obvious and satisfactory.

If it had been shown (as it might easily have been done, had the fact existed) that the Ranger Cattle Company of Shackelford County and the Ranger Cattle Company of Throckmorton County were different corporations, the objection based upon the apparent discrepancy in name or description, as the case may be, would have been well taken. But the statute provides, that no misnomer shall defeat a conveyance to a corporation (Rev. Stats., art. 598); and in the absence of proof we think it ought to be presumed in this case that there was a mere misnomer or misdescription. Since Shackelford and Throckmorton counties lie contiguous to each other, the presumption, we think, from the face of these deeds is, that the name of the corporation is the Ranger Cattle Company simply, and that it had its pastures and property in both counties, and that it was neither a misnomer nor a misdescription to designate it as being either "of Throckmorton County" or "of Shackelford County." But we are not without evidence bearing upon the question. The deposition of N. L. Bartholomew, who signed the deed to Labriere as secretary and treasurer of the Ranger Cattle Company, testified, that he bought the land from Mrs. Hendrickson for "the Ranger Cattle Company," and while he did not testify directly upon the point, the inference is strong that the corporation for which he bought and that whose deed he signed as secretary were one and the same.

Appellees also insist that the court should not have rendered judgment for appellants for any interest whatever in the land; and further, that the evidence did not in any aspect of the case justify a judgment in their favor for the five-twelfths adjudged to them. The appellees showed a chain of title from the sovereignty of the soil which entitled them prima facie to recover the entire property in controversy; but the appellants showed that they were bona fide purchasers for whatever interest Mrs. Hendrickson, a granddaughter of Eleanor Fipher, would have been entitled to had the latter never conveyed the certificate. What that interest would have been it is difficult to determine. Upon that question the findings of the court are as follows: "John and Eleanor Fipher left surviving them at the time of their death, about the year 1860, four children, whose names were John, Jr., James M., Hugh, and Angeline. The proof shows that James M. has since died, leaving a widow and one child surviving him, both of whom are now living. * * * The proof shows that John, Jr., has since died,

leaving a widow and three or four children surviving him, and that they are now living; also, that Hugh died, leaving a widow, who is at present alive; also, that Angeline is dead. There is no proof whatever as to when Hugh and Angeline died, and no positive proof that she (Angeline) died without issue." The court also held, as a matter of law, that it was to be presumed "that Angeline died before Hugh and without issue;" and that "while there was no proof of the fact, defendant Labriere should have "the benefit of that presumption." As a result of these findings, the defendant was held to be an innocent purchaser of an undivided interest of five-twelfths in the land.

The cross-assignments of error call in question the correctness of the court's conclusions of fact and law, and also the correctness of the result. The testimony as to Mrs. Hendrickson's heirship is meager, confused, and unsatisfactory; but we think it sufficient to support the court's findings of fact which bear upon that question. But in order to maintain the defense of innocent purchasers, the burden was upon the defendants to show what interest Mrs. Hendrickson had in the land at the time of her conveyance to the Ranger Cattle Company. The plaintiffs had shown title to the land through a conveyance of the certificate by virtue of which it was patented, and were entitled to recover the whole, unless defeated as to a part by proof that the defendants had purchased an apparent title existing in the heir under whom they claimed, without notice of the plaintiffs' right. Where there was no proof—not even of a circumstance authorizing a presumption of a fact—that one of the descendants of Mrs. Fipher had died at such time as would have conferred title to an additional interest in the land upon Mrs. Hendrickson, the defendants simply fail to make their case as to such interest, and no legal presumption can be invoked to aid them. Not having shown that Hugh Fipher and Angeline Fipher, a son and the daughter, were dead at the time Mrs. Hendrickson conveyed the half-interest in the land, we think the defendants have failed to establish a right to any interest in the land as acquired through them or either of them. They are restricted, therefore, to what Mrs. Hendrickson inherited directly from her father, who inherited an interest of one-fourth directly from his mother.

Upon the question whether her father James M. Fipher survived his mother or not there is some conflict of testimony; but the court having found that he survived her, it follows that upon his death his wife, who subsequently married a man named Talent, and who was proved to be alive after the suit was brought, inherited a life-estate of one-third in the one-fourth interest in the land her first husband would have inherited had his mother never conveyed the certificate, and Mrs. Hendrickson, his daughter, inherited that interest in fee, subject to her mother's life-estate of one-third in the same. What Mrs. Hendrickson would have inherited from her father, the defendants were

entitled to hold in this suit; and that is, one-sixth in fee simple and a remainder in fee in one-twelfth after the termination of the life of her mother.

Our conclusion is, that the plaintiffs should have had a judgment for an undivided interest of three-fourths in the land in controversy in fee simple, and for an interest of one-twelfth during the life of Mrs. Talent, the mother of Eleanor Fipher; and that defendant Ballard should have been adjudged to hold an undivided interest of one-sixth of the land in fee, with remainder in fee in the one-twelfth after the determination of that life-estate.

The judgment might be here rendered, but on account of the unsatisfactory nature of the evidence upon the question of heirship, we think it proper to remand the case for a new trial. The judgment is accordingly reversed and the case remanded. The costs of the appeal will be adjudged one-half against appellants and one-half against appellees.

*Reversed and remanded.*

Delivered February 5, 1892.