PEYTON v. STURGIS. (No. 7880.)

(Court of Civil Appeals of Texas. Dallas. Feb. 16, 1918. Rehearing Denied April 6, 1918.)

1. CORPORATIONS ☞415 — POWER OF OFFICERS TO EXECUTE MORTGAGE.

While, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1159, providing that the directors or trustees shall have the general management of the affairs of the corporation, and article 1162, providing that corporations shall have power to borrow money on credit, a corporation may mortgage its property to secure payment of its debts when solvent, authority to do so does not inherently exist in any officer, but must be conferred by board of directors.

2. CORPORATIONS ☞432(1)—MORTGAGES—AUTHORITY TO EXECUTE—PRESUMPTION.

The execution of mortgages by the president or vice president of a corporation to secure payment of corporate debts will be presumed to be a corporate act, since such officers are the appropriate ones to exercise such functions.

3. CORPORATIONS ☞399(8)—CHATTEL MORTGAGES—AUTHORITY TO EXECUTE.

The signing of a chattel mortgage by the secretary-treasurer of a corporation is not with apparent authority, since such officer is not ordinarily the appropriate officer to perform such acts.

4. CORPORATIONS ☞425(4) — AUTHORITY OF OFFICER—ESTOPPEL.

Although, after the inception of a corporate existence, there was no corporate organization, such as the adoption of by-laws, etc., where the secretary-treasurer was in active and exclusive management of the corporation's affairs until its assets were disposed of, the corporation would be estopped to deny the authority of such officer to execute a chattel mortgage to secure a note representing a pre-existing corporate debt; especially where the corporation received the money.

5. CHATTEL MORTGAGES ☞225(1)—PURCHASE OF MORTGAGED PROPERTY—ESTOPPEL.

The corporation being estopped to deny the authority of the secretary-treasurer to execute a chattel mortgage to secure a note, representing a pre-existing corporate debt, defendant, purchaser of mortgaged property, would be estopped in suit to foreclose mortgage, since the defense he urges is that of the corporation.

6. CHATTEL MORTGAGES ☞150(1)—RECORDING—CONSTRUCTIVE NOTICE.

Where, under the undisputed evidence, the secretary-treasurer by the course adopted by the corporation for transacting its business was authorized to execute a chattel mortgage, constructive notice from recording the same will be imported to defendant, purchaser of mortgaged property, where his right to deny such notice rests solely on the claim that the officer's acts were ultra vires.

7. APPEAL AND ERROR ☞1039(13) — IMMATERIAL VARIANCE—REVERSAL.

The dimensions of the mortgaged property not being a material issue that the pleading gave them as 24x26 feet, while the mortgage introduced in evidence stated them to be 24x36, would not warrant a reversal.

Appeal from District Court, Hill County; Norton B. Porter, Judge.

Suit by George F. Sturgis against E. O. Hughes and another, in which E. H. Peyton was made a party. Judgment for plaintiff, and Peyton appeals. Affirmed.

J. J. Averitte and Wear & Frazier, all of Hillsboro, for appellant. N. J. Smith and F. E. McKee, both of Hillsboro, for appellee.

RASBURY, J. Appellee sued E. O. Hughes and A. E. Wallace in the court below on their joint promissory note for $600, accumulated interest and attorney's fees. Appellant was made a party to the suit, and a foreclosure of a chattel mortgage lien on property securing payment of said debt and owned by appellant at time of the suit was sought against him. Jury was demanded and impaneled, but at conclusion of the introduction of the testimony the court instructed verdict against Hughes and Wallace upon the note and for foreclosure of the chattel lien against appellant, which was returned by the jury and followed by similar judgment, from which this appeal is prosecuted.

All issues presented in the briefs are raised by the pleadings, which render a statement thereof unnecessary. The issues presented challenge in one or another form the right of appellee under the evidence to foreclose the chattel mortgage lien against appellant. The controlling facts in that respect disclosed by the evidence are substantially without dispute, and those essential to an intelligent consideration of the issues are in substance these: Prior to the transactions hereafter detailed the Marvel Mill Company, a private corporation, was enfranchised with authority to construct a "mill and grain elevator, to buy and sell grain, and to manufacture same into food products:" After the articles of incorporation were approved by the proper state official there was no corporate organization whatever by the directors named therein, who were E. O. Hughes, A. E. Wallace, and F. L. Vanderburgh, all owning and having subscribed to an equal amount of the capital stock, save that it appears inferentially from oral testimony that E. O. Hughes was president and A. E. Wallace was secretary and treasurer. Wallace was in "active" management of the affairs of the corporation, while Hughes was employed by Thompson and Campbell in the office of the Hillsboro Mirror. It does not appear from the record that Vanderburgh served the corporation in any capacity, or that he was interested therein at the time of the controversy involved in the present litigation. Approximately eight months after the Marvel Mill Company was enfranchised the note sued upon was exe-

cuted. The note was dated August 27, 1914, payable to Sturgis Bank, unincorporated, October 1, 1914, for $600, with 10 per cent. per annum interest from date, and providing for the usual attorney's fees if not paid at maturity, and was signed by Hughes and Wallace. At the foot of the note was the notation "mtg. on Marvel Mill." The note represented a pre-existing debt due by Marvel Mill Company to the bank, and was in renewal thereof. As security for payment of the note chattel mortgage was executed upon a three-story frame building with concrete foundation 24x36 feet, situated on north Waco street, Hillsboro, Tex., on a lot leased from the St. Louis Southwestern Railway Company. The mortgage was signed "The Marvel Mill Co., by E. A. Wallace, Sec. & Treas.," and filed for registration September 12, 1914, at 4:30 o'clock p. m. On November 18, 1914, Peyton, on one part, and Hughes and Wallace who denominated themselves as sole proprietors of the Marvel Mill, on the other, entered into a preliminary agreement for the sale and purchase of the Marvel Mill. In enumerating the indebtedness against the mill Hughes and Wallace failed to disclose that the debt sued on was secured by the mortgage detailed. On December 2, 1914, in consummation of the preliminary agreement Hughes and Wallace, in consideration of $8,000 paid in various ways, formally conveyed the mill and other property of the corporation to appellant. The conveyance was filed for registration December 17, 1914. Appellant had no actual knowledge of the fact that the $600 note was the debt of the Marvel Mill Company. It was claimed that appellant had actual knowledge of the mortgage before acquiring the Marvel Mill property, but the most that can be deduced from the evidence is that the facts on that issue were in conflict. The corporation was not a party to the suit. Hughes and Wallace were, but they only appeared for the purpose of defending the cross-action of appellant.

[1, 2] The first contention is, in substance, that the mortgage is void because it appears that the person executing it was at most an officer or stockholder, and not authorized by the corporation to do that which he assumed to do. Confining our remarks and the application thereof to the precise facts of the present case, it must be conceded that while a corporation may mortgage its property to secure payment of its debts when solvent (article 1162, Vernon's Sayles' Stats.), ordinarily that authority does not inherently exist in any officer of the corporation as such, but must in all cases be conferred by the board of directors. Article 1159, Vernon's Sayles' Stats.; Henderson Merc. Co. v. Bank, 100 Tex. 344, 99 S. W. 850. However, it is the rule that when such acts are done by the president or vice president of the corporation, they are apparently authorized by the corporation, since such officers are the appropriate ones to exercise such functions, and their acts will be presumed to be corporate acts in the absence of a showing that such officers were not so authorized. Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734; Brownwood Ice Co. v. York Mfg. Co., 37 S. W. 339.

[3, 4] But it can hardly be said that a chattel mortgage is signed with apparent authority when done by the secretary and treasurer, since that officer is not ordinarily the appropriate officer to perform such acts. It is, however, urged that in the light of the facts in the present case a different rule prevails, and that the corporation is estopped to deny the act of its secretary for the reason that it placed the sole management of its affairs in his hands, and for the reason that it accepted the benefits of his acts. As we have said, there is in the record an agreement that there was never any corporate organization, such as the adoption of by-laws defining the duties and authority of any officer. In fact the record fails to show, save by inference, that officers were selected, but does show that from the inception of the corporate existence Wallace was in active, and inferentially exclusive, management of the corporation's affairs until its assets were disposed of. Such a course of management or conduct, it occurs to us, is sufficient to estop the corporation to deny the authority of Wallace to act for it, particularly when it is not disputed that the corporation received the money. It has been decided that when the president of a corporation, with the full knowledge and consent of the directors and stockholders, transferred its realty without resolution directing it, the conveyance was binding, and those assenting were estopped to deny its validity. Aransas Pass Harbor Co. v. Manning et al., 94 Tex. 558, 63 S. W. 627. The reasons are just as cogent that assent by the directors and stockholders to the act of borrowing and securing payment of money with which to conduct the business of the corporation will estop them to deny the authority of the one assuming such authority. It is also held, despite the general rule, that the authority exercised by Wallace in the present case may arise from assumption of the authority or an acceptance of the benefits of the act. Eastern Ry. Co. v. Ellis, 153 S. W. 699. It is not disputed that Wallace assumed the authority, or that the corporation accepted the benefit of his act, which was the extension of a debt then due.

[5] Under such condition and in the light of the cases cited, it will hardly be denied in a suit between appellee and the corporation that the latter would be estopped to deny the authority of its secretary. If, then, the corporation is estopped, appellant is similarly so, since the defense he urges is that of the corporation and he in that respect possesses no greater rights than would the corporation.

[6] The next contention is that Wallace being without authority to execute the chattel

mortgage, its registration was not constructive notice to appellant in the absence of actual notice. While we think the evidence on the issue of actual notice is conflicting, and hence would not authorize a peremptory instruction by the court, yet having found that under the undisputed evidence Wallace under the course adopted by the company for transacting its business was authorized to execute the mortgage, constructive notice will be imported to appellant, since his right to deny such notice rests solely on the claim that Wallace's acts were ultra vires.

[7] It is further contended that the judgment is erroneous because of a variation in the description of the mortgaged property as contained in the pleading from that contained in the mortgage introduced in evidence. In connection with the issue thus raised the record discloses that the description of the building, which was situated upon leased land, contained in the pleading and the mortgage admitted in evidence was identical, save that in the pleading the size of the building was given as 24x26 feet, while in the mortgage it was given as 24x36 feet. The point does not, in our opinion, warrant a reversal of the case. Brown Cracker & Candy Co. v. Johnson, 154 S. W. 684, and cases cited. Under authority of the cases cited the dimensions of the mortgaged property were not a material issue in the case, the material issue being the validity of the mortgage, and as a consequence the misdescription could not mislead or surprise appellant as to any fact bearing on that issue. Further, the cases referred to hold, in effect, that when testimony at variance with the pleading is offered, it is the duty of the complaining party to then object, and a failure to do so is a waiver of the variance.

Believing that no reversible error is disclosed by the record, the judgment is affirmed.