## DAGGETT et al. v. CORN.
### No. 3812.

Court of Civil Appeals of Texas. Amarillo.
Nov. 2, 1932.

Rehearing Denied Dec. 14, 1932.

Alfred M. Scott, of Lubbock, and Oliver W. Fannin and Bryan, Stone, Wade & Agerton, all of Fort Worth, for appellants.

Bledsoe, Crenshaw & Durpee and Wilson, Randal & Kilpatrick, all of Lubbock, for appellee.

MARTIN, J.

Appellee had on his ranch in Crosby county a large number of what is described as "Florida cattle." One Brabham was feeding cattle at Idalou, in Lubbock county. On November 15, 1928, appellee sold to Brabham 225 head of these cattle, for which Brabham executed a note for $14,437.50, secured by chattel mortgage on the cattle sold. On December 7, 1928, appellee sold Brabham 199 head more of these same cattle, for which Brabham

executed his note for $12,258.40, secured also by chattel mortgage on the cattle sold. These notes evidenced the entire consideration for the cattle, no cash having been paid.

Each of these chattel mortgages contained the following stipulations:

"This number of steers representing the total of steers mortgagor purchased from Frank Corn and delivered to Idalou, Texas, on this day and to remain in feed lots on full feed during the terms of this mortgage. * * *

"That so long as the possession of said property is permitted to remain with mortgagor the same shall not be sold, mortgaged or removed from the place above named without the written consent of the mortgagee."

Appellee filed suit upon the notes above described and for a foreclosure of his mortgage against Brabham, and joined as conversioners appellants and others, alleging that they had converted certain of said cattle with actual or constructive notice of his said mortgage and the terms thereof.

Appellants filed an answer consisting of general and special exceptions, general denial, and specially pleaded:

(1) Express consent of appellee to the shipment and sale of the cattle;

(2) Implied consent to their shipment and sale;

(3) Ratification of their sale by appellee.

Supported by proper findings of the jury, the court entered judgment against appellants for the value of some of the cattle alleged to have been converted, the total of which amounted to 118 head. Judgment was also taken against Brabham for the amount of appellee's debt, aggregating about $30,000, and for a foreclosure of his mortgages. Brabham has not appealed.

It is vigorously urged that a peremptory instruction should have been given for appellants because the evidence established all three of the defenses above pleaded.

That a chattel mortgagee may waive his mortgage lien, or be estopped to enforce it by conduct inconsistent with its existence, is too well established as a legal proposition to here require any discussion, and we content ourselves by merely citing some of the authorities. First Nat. Bank v. Railway Co., 97 Tex. 201, 77 S. W. 410; Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066; Rusk County Lumber Co. v. Meyer (Tex. Civ. App.) 126 S. W. 317; 9 Tex. Jur. 184, § 78.

The dispute here is over the facts, rather than the existence of this well-recognized rule. Brabham testified positively to express consent and to a course of dealing from which consent would necessarily be implied. Appellee, however, testified positively in express contradiction to this. On cross-examination he became somewhat confused, due, it is alleged by appellee, to his deafness. He testi-fied, in part: "He was to let me know before he shipped any cattle and he never done that." These cattle appear to have been shipped at various times by Brabham to different parties prior to January 22, 1929. Appellants are either commission merchants to whom the cattle were consigned or are purchasers thereof. Corn testified he had no knowledge of these shipments, except as to 4 head, prior to January 22, 1929, when he was advised of the shipment of 93 head to Fort Worth. The testimony further shows that he was instructed by Brabham to draw on him for the proceeds of these and that he did so. The draft was turned down, and some ten or twelve days after receiving knowledge of the shipment he notified one of the appellants, a commission merchant in Fort Worth, of his mortgage. However, at this time he knew that the cattle had already been sold and the proceeds placed to the credit of Brabham. He never received any part of these from Brabham or appellants.

■ It may be admitted that appellee knew that the mortgagor would eventually have to sell the mortgaged property to discharge his debt, but it has been expressly decided that this does not necessarily show a waiver of his lien. Weeks v. First State Bank (Tex. Civ. App.) 207 S. W. 973.

■■ This court is bound by the findings of the jury if there is any evidence to support such, and mere conflicts or contradictions do not justify us in disregarding the testimony of a witness given in support of an issue. Wonderful Workers of the World v. Woods (Tex. Civ. App.) 297 S. W. 232; El Paso Street Ry. Co. v. Talamantes (Tex. Civ. App.) 40 S. W. 228. For other cases on this question, see Texas Employers' Insurance Association v. Sloan (Tex. Civ. App.) 36 S.W.(2d) 319; Kuykendall v. Johnson Funeral Parlor (Tex. Civ. App.) 38 S.W.(2d) 601; Jones v. Jones (Tex. Civ. App.) 41 S.W.(2d) 496; Gonzales v. Word (Tex. Civ. App.) 45 S.W.(2d) 305.

■■ Giving effect to the testimony of appellee as a whole, we are of the opinion that it supports the jury's finding that there was no consent given Brabham by appellee to ship and sell the cattle.

A mortgage lien may be waived by either express, implied, or conditional consent.

With regard to conditional consent, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties or in favor of the purchaser who was a party to the condition or had knowledge thereof; but the failure of the mortgagor to comply with the condition will not affect the rights of a purchaser who does not participate therein or have knowledge thereof. Rusk County Lumber Co. v. Meyer (Tex. Civ. App.) 126 S. W. 317; Oklahoma Cattle Loan Co. v. Wright et al., 219 Mo. App.

157, 268 S. W. 712; Tucker v. Mann, 124 Ga. 1003, 53 S. E. 504.

It is specially urged here that the evidence shows conditional consent to the sale, of which appellants had no knowledge. Some of the quoted evidence above is undoubtedly sufficient to show that the mortgagee was willing for the mortgagor to ship the cattle in controversy provided he notified him in advance of such purpose. To our minds this presents a materially different situation from the cases relied on by appellants in which the facts evidence consent of the mortgagee to ship and *sell* the mortgaged property. It must necessarily have been contemplated by the parties to this mortgage that the cattle would be shipped, but not that they would be shipped in the name of and *sold* by the mortgagor. Notified in advance by the mortgagor of his intention to ship on a certain date, the mortgagee could have protected himself by consenting to the removal of the cattle in violation of the express terms of the mortgage:

(1) If the shipment was consigned to the commission company in his name; or,

(2) By notifying the consignee of his interest and of any conditions he agreed upon with the mortgagor regarding the disposition of the proceeds which enabled him to protect his mortgage.

■ We interpret the evidence claimed to prove a conditional consent as going no further than to show a condition precedent upon which the mortgagee was willing to give his consent to the sale of the cattle, but not as establishing the fact of consent upon a condition. Nor do we think the drawing of the draft under the recited circumstances, standing alone, either evidences implied consent or establishes a ratification as a matter of law of the sale by mortgagor of the property in controversy. While the appellee delayed some ten or twelve days in notifying the commission company, delay alone does not ordinarily establish a ratification. C. E. Parks Grain Co. v. Townsend (Tex. Civ. App.) 267 S. W. 1011. It is merely evidence, along with other facts, from which, if the delay should be unreasonable, the jury may infer that there has been a ratification. 2 Tex. Jur. 491, § 91.

It will be noted that appellee did not receive any of the proceeds of the sale of the 93 cattle. He merely attempted to secure such proceeds, and appellants were not injured by any delay, since they had already paid the money over to Brabham at the time of the act of appellee in drawing the draft for the proceeds, which appellants argue shows a ratification. Plainly appellee's delay neither misled nor injured any one. No estoppel could arise from it, and his effort to protect himself from loss could not be construed, as a matter of law, into a ratification of a previous unauthorized act of the mortgagor. The issue of ratification was submitted to and found by the jury against appellants. The submission of this issue was all appellants were entitled to, in our opinion.

■■ Appellants offered to prove certain conversations and statements made between appellee Corn and Brabham at the time the chattel mortgages in question were executed, the effect of which was to show that Brabham had the right to ship and sell the cattle when they got ready for market. This was excluded upon the theory that it contradicted the terms of the mortgages which we have quoted above. That such testimony did vary and contradict the terms of the chattel mortgages in question cannot be disputed, and that as between the parties to the instruments such testimony is inadmissible, is likewise not controverted by appellants. Their proposition, if we comprehend it, is that the consignees and purchasers of these cattle from Brabham, not being parties, but strangers to the instruments, were not bound by their terms and could introduce testimony in contradiction of them. In support of this contention appellants quote from Vander Stucken v. Willoughby et al. (Tex. Civ. App.) 242 S. W. 478, 479, as follows: "The rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract. A stranger to such written instrument is not bound by its terms, and therefore he cannot hold other parties bound by the same. Johnson v. Portwood, 89 Tex. 249, 34 S. W. 596, 787; * * * 22 C. J. 1292, 1293; 10 R. C. L. 1020."

This is not a full statement of the rule. It is inaccurate, in that the rule as to the exclusion of parol testimony applies as well to the privies as to the parties to any contract. That is, neither the parties to a contract nor those in privity with them may introduce oral testimony to contradict or vary its terms. This is shown by the very authorities cited in the Vander Stucken Case, supra.

Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 599, 787, is a Supreme Court case and is one of the leading cases which support the rule in question. In this case a controversy arose between plaintiff and defendant having a written contract, and an intervener having only an oral contract with the plaintiff. It was there held that the defendant could not offer testimony in contradiction of such written contract, but intervener could; the court, however, observing: "But, had the intervener taken a mortgage from the defendant, he would, as to the right so acquired, have been in privity with the defendant, and would not be permitted to introduce parol evidence to vary the terms of the written memorandum."

Concrete application of the principle of law here announced was given in the case of South Texas Implement & Machine Co. et al. v. Anahuac Canal Co., 280 S. W. 521, 523, by Judge Speer of the Supreme Court Commis-

sion of Appeals. This was a contest between senior and junior chattel mortgagees. The junior mortgagee was not a party to the original mortgage, but with the senior mortgagee held a lien from a common source on the same property. It is there stated: "Evidence appears to have been admitted in this case which tended to show that the crops upon the Chambers county land for 1920 were not within the contemplation of the parties, but this clearly contradicts what we have held to be the terms of the written instrument, and, even though admitted without objection, can have no effect to vary that instrument."

See, also, Childress v. First State Bank of Barnhart (Tex. Civ. App.) 264 S. W. 350; Peyton v. Sturgis (Tex. Civ. App.) 202 S. W. 205; 22 C. J. 1292, and authorities there collated.

"Privity" has been said to mean, in its broadest sense, mutual or successive relationship to the same right of property; a successive relationship to or ownership of the same property from a common source. Thus it has been said that "privity" implies succession; that "privies" occupy that relationship to others because of derivative rights of property. 50 C. J. 404, 405.

Since in our opinion the recited relationship of appellants constituted them privies to the instrument in question, they were bound by its terms, and the court properly excluded the testimony in question.

■ Nor do we think the court erred in sustaining appellee's special exception to appellants' answer pleading custom as between mortgagees and mortgagors in the handling and shipment of cattle. A custom or usage is never admissible for the purpose of contradicting and varying the terms of a written contract. Baltimore Base Ball Club & Exhibition Co. v. Pickett, 78 Md. 375, 28 A. 279, 22 L. R. A. 690, 44 Am. St. Rep. 304; Pennsylvania R. Co. v. Naive, 112 Tenn. 239, 79 S. W. 124, 64 L. R. A. 443. Such testimony is receivable, however, where the written instrument is ambiguous, to explain its meaning. Peet v. Peet, 229 Ill. 341, 82 N. E. 376, 13 L. R. A. (N. S.) 780, 11 Ann. Cas. 492.

■ The appellants' eighth proposition is as follows:

"The Court erred in excluding from the jury upon objection of counsel for appellee, the following testimony of appellee Corn:

" 'Q. You testified as to two conversations that you had with Mr. Brabham after these steers were sold to him. What did you tell him or what did he tell you regarding the shipping of these cattle to market and the sending of the proceeds to you?

" 'A. I don't remember what was said.

" 'Q. Did you or not? Was there then some discussion between you and Brabham regarding that?

" 'A. About him sending me the money?

" 'Q. Yes, about him sending you the money?

" 'A. He (Brabham) wrote me to draw on him for the first cattle he sold besides the four head. I drew on him for the 93 head and the four head, all in one draft, that was his instructions.

" 'Q. And it was agreeable with you on that occasion for him to ship the cattle providing he did send you the proceeds, that was what you were after?

" 'A. That was all the interest that I had in them.

" 'Q. And it would have been agreeable with you, would it not, for him to have shipped the remainder of the cattle if he had sent you the proceeds?

" 'A. Yes, certainly. He could have given them away if he had wanted to, if he had paid me the money. I had title until he paid me for the cattle, that is what I am suing for now.

" 'Q. The first shipment of cattle that he told you to draw on him for had not been in the feed pens for the full length of time provided in the mortgage, had they?

" 'A. No, sir. It didn't have to be. He could use his own discretion about that.

" 'Q. He could use his own discretion about that?

" 'A. Yes. He didn't have to ask me whether he could ship them or not. It is conceded that a man when he sells anything that he is going to pay his debts with it, the man that had the mortgage.'

"Said evidence being admissions on the part of appellee Corn, and showing, or at least tending to show, that mortgagee had consented for the mortgagor to ship and sell the cattle provided mortgagee received the proceeds."

To this testimony the appellee, at the time it was offered, made the following objections: "Because it is immaterial and irrelevant, an attempt to vary and contradict the terms of the written instrument by parol testimony. The written agreement, presumable in lieu of all prior negotiations were merged into it and they cannot change or vary or add to it in any way by proof of any conversations. I want to object to it further on the ground that there is no pleading of fraud, accident or mistake, such as would authorize the introduction of parol testimony."

■ What has already been said makes it plain that a mortgage may be waived either by express consent given after the execution of the mortgage, or by words, acts, or conduct giving rise to implied consent. Keeping in mind that Brabham had testified positively to express consent and to facts and circumstances occurring thereafter showing implied consent given by appellee after the execution of the mortgage, the above testimony plainly

tended to corroborate Brabham and to show consent which amounted, in law, to a waiver of mortgagee's lien on the cattle in controversy. The main objection urged, that it varied and contradicted the terms of the mortgage, would obviously have no application to statements made after the execution of the mortgage. Parties, of course, may make a new contract or may vary in part one already made. A multitude of cases could be cited to show that the terms of a mortgage may be waived subsequent to its execution, but we deem it unnecessary.

This case, considering its complicated character, was well tried, and we have regretfully reached the conclusion that the above action of the court was such error as compels us, under our duty, to order a reversal.

Since we must reverse the case, we deem it appropriate to make the following additional observations:

■ In submitting the issue of consent, the court, in substance, asked the jury to find whether or not appellee consented to the shipment and sale of the cattle "in writing or otherwise." It is insisted that the last phrases of this instruction should have been defined. The court did give the specially requested instruction defining "express" and "implied" consent; but since neither the terms "express" nor "implied" consent were used in the charge, appellants claim this did not cure the error. In connection with the issue of consent, it is suggested that an explanatory charge be given to the effect that consent might be either express or implied, coupling same with appropriate definitions of these terms. We are not impressed with the view that there is any merit in the contention of appellants that the different kinds of consent should be separately submitted. Consent is the ultimate fact to be found, and we think it would be confusing for the court to submit separately the varieties of consent recognized by law.

In submitting special issues, the court failed to place the burden of proof upon appellee to establish the affirmative and negative answers to the issues relied upon by appellee for recovery. This is assigned as error.

Confusion exists in the authorities of this state as to the necessity of giving such a charge. It would seem to serve no useful purpose for us to lengthen this opinion by a discussion of these, and we pass this question with a quotation from a recent decision of the Supreme Court Commission by Judge Sharp in the following language: "Since this case will be reversed and remanded, we think it proper to state that, when plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to

those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence. When the defendant challenges the right of plaintiff to recover by reason of certain exceptions, and that by virtue of certain exceptions there is no liability on the part of the defendant, and special issues based upon such exceptions are submitted to the jury upon such special issues, it is proper to instruct the jury that the burden is upon the defendant to establish them by a preponderance of the evidence." Houston & T. C. Ry. Co. v. Stevenson, 29 S.W.(2d) 995, 999.

This authority appears to sustain appellants' contention.

For the error discussed, the judgment is reversed, and the cause remanded.