## ALLISON RANCH CO. v. ANGELO AUTO ELECTRIC, Inc.
### No. 8982.

Court of Civil Appeals of Texas. Austin. Nov. 20, 1940.

Rehearing Denied Dec. 11, 1940.

646

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Clyde Vinson, of San Angelo, for appellee.

BLAIR, Justice.

Appellee, Angelo Auto Electric, Inc., sued appellant, Allison Ranch Company, a partnership composed of J. S. and Jack Allison, for $196, the price of a wind-charger sold to appellant by appellee. Appellant set up failure of consideration, alleging that the wind-charger was wholly unsuited and entirely worthless for the purpose for which it was sold and guaranteed or warranted. On motion of appellee, at the conclusion of the evidence, the court instructed a verdict and accordingly rendered judgment for appellee for $196; hence this appeal.

Appellee sold and installed for appellant an electric light system, consisting of (a) Delco Light Plant; (b) Delco Batteries.; (c) High Power Wind-Charger; and (d) High Power Adapter, each being given a definite value in the sales contract, the wind-charger being valued at $196. Appellee furnished the labor and materials to install the plant, the agreed total price being $1,072.13. The plant was completed and began operating about February 17, 1939. On February 23, 1939, J. S. Allison wrote appellee that "the charger you erected is a 'joke,'—it takes a cyclone to run it—sounds like a worn out threshing machine * * *. It evidently needs some adjustments—you should send some one to make them." The following day appellee's general manager and electrician went to the appellant's ranch and found the wind-charger to be operating at full capacity by an extremely high wind, and advised that it be stopped because of that fact. On February 27, 1939, J. S. Allison signed a "Statement of Final Completion," which re-

cited that each item composing the plant, including the wind-charger, "was properly and satisfactorily installed" on that date. A few days thereafter appellant paid appellee $876.13 on the purchase price, leaving a balance unpaid of $196; and Allison testified that he told appellee's general manager at the time that he would not pay for the wind-charger until it was shown that it would work. Thereafter, on March 13, 1939, J. S. Allison wrote appellee as follows:

"I am almost convinced that the wind charger is a failure. Don't think that time is going to improve it. It has had plenty of high winds to limber it up. Yesterday we had a good wind all day—all of our wind mills run at a good rate—Think I started the charger at least a dozen times after the wind got to be more of a gale than an average wind it got up enough speed to do some charging.

"You can do as you like—but I think you had better take it down, before it has any more ware. I am not going to be responsible for it—we had to tighten up the propeller blades—the bolts were all loose—balance of the system seems to be doing fine."

Immediately upon receipt of this letter, appellee's representatives again inspected the wind-charger and found, according to their testimony, that it was working as recommended by appellee; and that J. S. Allison seemed to be satisfied. About April 18, 1939, appellant had the wind-charger taken down and shipped it to appellee, who refused to receive it, and appellant placed it in storage, and on the trial tendered it to appellee.

During the negotiations leading to the purchase of the light plant appellant first thought of purchasing only the wind-charger as generating power for electricity, but was dissuaded by appellee from doing so, because it would only generate electricity when the wind blew; and finally the parties agreed upon the plant installed, in which a gasoline operated motor was installed to be used at times when the wind would not be sufficient to operate the wind-charger, the parties knowing that the wind-charger would not be sufficient at all times to produce enough electricity for appellant's use. There was no written warranty of the wind-charger, but as to breach of warranty and failure of consideration of the purchase price of the wind-charger appellant alleged that appellee sold, delivered and installed it as being suitable for the purpose for which it was sold, knowing the purpose, and knowing that appellant would not purchase it except for the warranty, expressed or implied, that it was suitable for the purpose for which it was sold; and that after it was installed and placed in operation it was discovered that it was wholly unfit and worthless to generate electricity because of the following alleged reason: "in that the usual and ordinary breeze and wind currents would not turn said wind-charger but it required practically a gale, a wind much stronger than was contemplated by the parties to start said wind-charger and to keep it running, and as a fact because said wind-charger would not turn and would not generate electricity in the usual and customary breeze to be expected and in the breeze which was in the contemplation of the parties at the time of said sale and purchase, said wind-charger was wholly useless to these defendants for the purpose for which it was bought and for which plaintiff sold it, and plaintiff's covenant and warranty that the same would generate electricity on defendants' ranch in Pecos County, Texas was wholly breached."

Appellant further alleged that after notice appellee had on two occasions attempted to adjust or cure the trouble with the wind-charger, and represented that it was new and stiff and would limber up with use; but that it had failed to do so; and that after trying it out for an additional length of time after the adjustments, it would not turn on the usual and ordinary wind as contemplated by the parties; and appellant returned it to appellee, who refused to accept it.

On this issue raised by the pleadings, appellee's witnesses testified that if the wind-charger did not begin charging the batteries at a 7½-mile wind, it would be worthless for the purpose for which it was sold; but that on the two occasions they were called to adjust the wind-charger it was working perfectly and as recommended by appellee; and that all it needed was more use to limber it up. J. S. and Jack Allison each testified that in their opinion it took a 10 or more mile wind before the charger would begin charging the batteries, but that they had nothing to measure the speed of the wind, and each of them admitted that he had seen the charger generating at full capacity on high winds. J. S. Allison who observed the operation of the wind-charger almost daily, testified as follows:

"Q. Did Mr. Prager or any other employee of the plaintiff represent to you at the time you bought the wind-charger, the whole plant in fact, that the wind-charger would furnish sufficient electricity for your needs? A. No, they did not.

"Q. You did not buy the charger for that purpose upon the representation of the plaintiff or agents—that it would produce electricity for your ranch? A. I bought it from the plaintiff because they guaranteed it to give satisfaction.

"Q. Isn't it a fact that the wind-charger during the months of February and March, while you had it up, did actually produce some electricity? A. Yes, sir."

"Q. Now, what portion of the time during February, March and April, that you had the charger, that you actually had the charger on and the Delco plant disconnected? A. Always except when we had to have the engine to produce the light—about 10% of the time, I guess.

"Q. In other words, you had it running about 90% of the time, is that correct? A. Yes, sir.

"Q. You had the charger on about 90% of the time? A. Yes.

"Q. During February, March and April you had juice for the batteries from the engine and wind-charger? A. Yes, sir.

"Q. You had lights for your use during February and March, didn't you? A. Yes, sir."

▮ The trial court correctly instructed a verdict and rendered judgment for appellee, because the admission of J. S. Allison that the wind-charger supplied appellant's ranch with sufficient electricity during 90 per cent of the time it was used showed as a matter of law that it was not wholly worthless for the purpose for which it was sold and warranted, and therefore no such failure of consideration as would totally defeat the right of appellee to recover the purchase price of the wind-charger was shown. The rule is settled that if machinery is sold for a particular purpose, and it will not perform any of its functions, the buyer may set up total failure of consideration as defense to the seller's suit for the purchase price of the machinery; but if it only performs them badly the remedy is to recover for a partial failure of consideration, showing clearly the extent of same. Wright & Clark v. Davenport, 44 Tex. 164; Gutta-Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 112 S.W. 1047. When a buyer relies upon the defense of failure of consideration he must make out his defense in accordance with the usual rules. That is, if the buyer has made any use of the machinery, he may not contend that there is a total failure of consideration. J. B. Colt Co. v. Reeves, Tex.Civ.App., 266 S.W. 564; Swift v. Roach, Tex.Cr.App., 266 S.W. 846; Jameson v. Consolidated Oil Co., Tex.Civ.App., 284 S.W. 309. It is also uniformly held that the mere fact that goods or machinery do not come up to the seller's warranty does not prove that they are worthless. Gutta-Percha & Rubber Mfg. Co. v. City of Cleburne, supra; Pope v. Clendennen, Tex.Civ.App., 257 S.W. 335; L. D. Powell Co. v. Sturgeon, Tex.Civ.App., 299 S.W. 274.

▮ But appellant contends that under its plea of total consideration it was entitled to recover for a partial failure of consideration, in accordance with the rule announced in Gutta-Percha & Rubber Mfg. Company v. City of Cleburne, supra. It is true that a buyer of warranted goods or machinery may recover for a partial failure of consideration by reason of defects or deficiencies under a plea of total failure of consideration, provided the extent of the partial failure is clearly shown. However, appellant made no proof whatever of the extent of a partial failure of consideration. When a buyer resists a purchase money suit for warranted machinery by a plea of partial failure of consideration, he is entitled to have deducted from the amount agreed to be paid the difference between the value of the machinery as it is and the agreed price thereof as it was warranted to be. Merrill v. Taylor, 72 Tex. 293, 10 S.W. 532; Fetzer v. Haralson, Tex.Civ.App., 147 S.W. 290, error refused. No such proof was made in the instant case, and in consequence neither the court nor the jury could have determined the extent of the partial failure of consideration claimed. Since appellant neither proved a total failure of consideration for the wind-charger, nor the extent of a partial one, and since the pleadings do not claim any offset for damages, appellee is entitled to recover the entire purchase price of the wind-charger, because under the rules stated no defense was made out.

The judgment of the trial court is affirmed.