WALTON v. SMULCER et al.

No. 15057.

Court of Civil Appeals of Texas.
Fort Worth.

June 24, 1949.

Rehearing Denied Sept. 16, 1949.

Nelson, Montgomery & Robertson, Otis E. Nelson and Lee Sellers, all of Wichita Falls, for appellant.

Jack Connell, of Wichita Falls, for appellees.

HALL, Justice.

Appellees, Howard and Jimmy Smulcer, oil well drilling contractors, sued appellant, S. H. Walton, in a district court of Wichita County, Texas for the amount alleged due them for drilling appellant an oil well 2127 feet at $1.75 per foot, based upon an oral contract.

Appellant answered by way of general denial and cross action. He admits in his answer that the contract plead and proved by appellees was substantially correct, and plead the following: " * * * that they were to drill such well with due and reasonable diligence, using that degree of care which an ordinary drilling contractor in this locality would use in drilling the well, in setting the casing, in testing the casing, and in cementing; that such well in the event that a formation was discovered at the depth of approximately 2100 feet was to have casing set therein, and that after the setting of casing, the Plaintiffs were to pump into the casing cement, or to cement tht well and the casing, and were to cement the well leaving the cement in the casing and in the hole to a depth of 20 feet from the bottom of the hole * * *"

By way of cross action appellant sought damages against appellees in the sum of $2,656.81, alleged due him because appellees failed (1) to set the casing firmly in the hole; (2) to spud or jog the casing; (3) in working the men overtime which prevented them from properly performing their duties in an efficient manner; (4) to use a test plug so as to test the casing to see whether or not the joints had become loose; (5) in leaving 577 feet of cement in the hole so as to prevent proper testing of the sands in the well below 1,600 feet; (6) to use any circulating pump; and (7) to apply sufficient pressure on the pump which would force the cement down to a depth of within 20 feet of the bottom of the hole.

The case was tried to a jury, which answered the court's submitted special issues in favor of appellees. Judgment was rendered accordingly for the sum of $3,722.25, full amount appellees sued for.

Appellant submits this appeal assigning five points of error. Points 1 and 2 relate to error of the court in permitting proof of custom and practice without any pleading of such custom and practice and without pleading that appellant, who is not a drilling contractor, knew of such custom and practice, or had any knowledge of such custom and practice. Points 3, 4 and 5 are as follows:

"3. The Court erred in submitting Special Issue Number One of the Court's charge, inquiring as to whether the Plaintiffs, Howard Smulcer and Jimmie A. Smulcer, fully complied with the terms of their agreement with defendant, S. H. Walton, in the drilling of the well in question."

"4. The Court erred in submitting to the jury its Special Issue Number Three, inquiring as to whether the defendant, S. H. Walton, agreed with the plaintiffs, Howard Smulcer and Jimmie A. Smulcer, that, on completing said well to a depth of 2127 feet, the defendant, S. H. Walton, would have an independent cementing contractor cement said well."

"5. The Court erred in the submission of its Special Issue Number Six, inquiring as to whether the cementing contractor was solely responsible for the cementing of the well involved in this suit."

The jury's answers to special issues involved in this appeal are substantially as follows:

1. That appellees fully complied with the terms of their agreement with appellant.

2. Agreement between the parties was that the well should be drilled to a depth of 2127 feet.

3. Appellant agreed with appellees that on completion of said well appellant would have an independent cementing contractor to cement said well.

4. That appellees did not agree to assume responsibility for the cementing of said well.

5. But they did agree to furnish part of the labor in the cementing of said well.

6. The cementing contractor was solely responsible for the cementing of said well.

7. The parties did not agree appellees would complete the well by leaving approximately 20 feet of cement at the bottom of the casing in the well in question.

8. That appellees did not leave more than approximately 20 feet of cement in the casing in the well in question.

In discussing points 1 and 2 we find appellees' pleading with reference to custom is as follows:

"Defendant further agreed to pay plaintiffs the sum of $1.75 per foot for the total depth to which said well was drilled and to compensate plaintiffs at the rate of $10.00 for each core head taken, and to compensate plaintiffs for Schlumberger time at the rate of $12.50 per hour, all shutdown time consumed to be paid at the rate of $12.50 per hour, plaintiffs agreeing to allow defendant a reasonable time within which to examining electric log prior to the time of setting casing, the reasonable time so allowed to be at the expense of plaintiffs. * * *.

"That plaintiffs exercised reasonable diligence and performed said contract in a careful and prudent manner and in conformity with the prevailing custom, usage, and practice of drilling contractors in the immediate area of the drilling of said well."

In connection therewith appellees specifically plead the following:

" * * * That after said well had been so drilled with said rotary drilling rig to the depth desired by the defendant, plaintiffs were to set in said hole casing to be selected by and furnished at the expense of defendant, and after said casing was so set in said well, plaintiffs were to furnish a part of the labor to the cement contractor selected by the defendant to enable the cement the well, at which time plaintiffs' contract with defendant was to be considered completely performed."

We have read the testimony of appellant. He did not testify, in substance, that his contract with appellees included pushing the cement down with sufficient force by their pressure pump so that all of it would be on the outside of the casing except 20 feet at the bottom of the hole, but his testimony along such line relates to the conversations he had with appellees at the time the cementing was taking place. His testimony pertaining to the contract is as follows:

"Q. * * *. I asked you if you and Mr. Smulcer and J. B. Price were present in the White Rose Cafe at Electra and made this contract, the provisions of—all—all the provisions of this contract? A. There wasn't no—there wasn't any provisions on it; just like the other wells was, and they moved out there on it.

"Q. Who was present when you did make a contract? A. Price and this, Smulcer and myself.

"Q. All sitting in the White Rose Cafe? A. At the White Rose Cafe.

"Q. At Electra? A. Yes, sir.

"Q. You did not make the contract with Mr. Price; you made the contract with Mr. Smulcer? A. I talked to Price out on the highway several days before and told him what I'd do; give him my note for six months to go over there and drill this well to 2100 feet."

It was undisputed by appellant that he employed cement contractors to cement the well. It seems that his main complaint is he understood appellee was to furnish the machinery and to push the cement down out of the casing except 20 feet at the bottom. Appellees contend that no such contract was made between them and appellant. The jury found there was no such contract

made between the parties. Appellees placed witnesses on the stand to prove as a matter of custom that it was not the contractor's duty to cement the well. In answering appellant's argument in his points 1 and 2 relative to the court's error in permitting proof of custom without pleading that appellant knew of such custom and practice or had knowledge of such custom and practice, we wish to point out that in the first place this testimony was introduced for the purpose of rebutting appellant's cross action, which was substantially based upon custom since he did not testify that he had a direct contract with appellees to push the cement out of the casing and on to the outside of same except 20 feet from the bottom; and in the second place it is noted throughout appellant's testimony that he is an experienced oil well machine operator and he testified in part as follows:

"Q. Now, would that have any tendency, Mr. Walton, to tear up your pipe? A. Well, I am a cable tool man, and I have been in it a long time and I never had one tore up yet on account of the cable tools.

"Q. You mean, drilling it out? A. Drilling it out. I've done a' half a million dollars worth of the work for the Consolidated Oil Company and never tore one up.

* * *

"Q. Have you rented spudders? * * * A. Oh, no, sir, I never rented it. I'm a pioneer of it.

"Q. You have had a spudder all the time? A. For thirty-three years.

"Q. Well, do you know—in your experience, have you learned— what is the— how do you usually hire spudders, by the hour or by the job, or what? A. By the hour—six.

"Q. And do you know the usual and reasonable and customary charge—does that include the crew? A. Yes.

"Q. Do you know the usual, reasonable and customary charge for a spudder to do the work that you were doing out there? A. Between six and eight dollars an hour."

Appellant having admitted he employed appellees to drill the well at the stipulated price of $1.75 per foot and the jury having found the contract did not provide appellees were to place cement in the well as desired by appellant, and appellant having plead and undertaken to prove by custom appellees were obligated to place cement as outlined by appellant in the well, we do not find the court committed error in allowing appellees' witnesses to testify as to custom among the oil men, especially since appellant admitted being in the oil field work. Hence we overrule appellant's points 1 and 2.

Appellant's point 3 pertains to the court's submitting special issue No. 1 as error; said issue and the jury's answer thereto are as follows:

"Do you find from a preponderance of the evidence that the Plaintiffs, Howard Smulcer and Jimmy A. Smulcer, fully complied with the terms of their agreement with Defendant, S. H. Walton, in drilling the well in question? Answer 'Yes' or 'No.' Answer: Yes."

We agree with appellant that the issue should not have been submitted because it was of a general nature, decided the whole law suit and submitted a mixed question of law and fact which has been held many times to be improper. See 41 Tex.Jur., p. 1031, secs. 230-231. However, we do not think in this particular case the error is sufficiently harmful to require a reversal since the ultimate issues in the case were submitted correctly in some of the other several issues above enumerated. This point is also overruled.

Appellant's point No. 4 cites as error of the court in submitting special issue No. 3, as follows: "Do you find from a preponderance of the evidence that the Defendant, S. H. Walton, agreed with the Plaintiffs, Howard Smulcer and Jimmy A. Smulcer, that, on completing said well to a depth of 2127 feet, the Defendant, S. H. Walton, would have an independent cementing contractor cement said well? Answer 'Yes' or 'No.' "

While we do not consider special issue No. 3 as being an ultimate issue, yet we do not find it harmful error sufficient to require a reversal because of its submis-

sion. Appellant not having shown injury by its submission, we overrule his point No. 4.

 Appellant's complaint in point No. 5 relates to the court's special issue No. 6, which reads as follows: "Do you find from a preponderance of the evidence that the cementing contractor was solely responsible for the cementing of said well? Answer 'Yes' or 'No.'"

What we have said about point No. 4 we adhere to as answer to his point No. 5 and overrule the same.

After reading the record in this case we have carefully considered appellant's five points of error and having overruled same and believing that he had a fair and impartial trial before his peers, the judgment of the trial court is affirmed.