**MINNEAPOLIS–MOLINE COMPANY,**
Appellant,

v.

**J. A. PURSER,** Appellee.

No. 16016.

Court of Civil Appeals of Texas.

Dallas.

June 22, 1962.

Rehearing Denied Oct. 5, 1962.

Bowyer & Thomas and William W. Sweet, Jr., Dallas, for appellant.

McKool & McKool, Dallas, for appellee.

YOUNG, Justice.

Appellee has no objection to the following statement of nature of case as made by appellant: "Payne Implement & Supply Company, located in Happy, Texas, was a dealer for the Appellant Minneapolis-Moline Company. As such dealer, Payne sold to Appellee J. A. Purser one 5-Star Minneapolis-Moline Tractor, together with swinging draw bar, cultivator and planter, for a total purchase price of $6,550.00. Appellee traded to Payne one 1952 Model Ford Tractor and a demonstration certificate, for which he received a total credit of $2,150.-00. The balance of the account, including carrying charges, was $5,203.06, payable as follows:

| | |
|---|---|
| January 1, 1959 | $ 304.61 |
| January 1, 1960 | 1,517.53 |
| January 1, 1961 | 1,637.97 |
| November 1, 1961 | 1,742.95 |

"The transaction was consummated by the execution of a conditional sales contract, which was thereafter assigned, by Payne Implement & Supply Company to appellant for a valuable consideration.

"Appellee made the first payment of $304.61, but refused to make any further payment. Appellant brought suit in the Trial Court for the balance due under the contract in the sum of $4,898.45, together with $500.00 attorney's fees, and prayed for a foreclosure of its lien against the tractor and implements. Appellee pleaded and the jury found a breach of warranty, and based upon such verdict the Trial Court entered judgment for the Appellee that the Appellant take nothing by its suit. This left the Appellee in the position of having title to and possession of the tractor and implements and at the same time relieved Appellee from paying for the same. From this judgment Appellant has perfected its appeal to this Court."

Appellee adds to above statement that "he has repeatedly since January 1960 offered the tractor to appellant and appellee still offers appellant the tractor today."

There was a jury trial, their answers being in substance as follows: (1) that the hydraulic system of the tractor in question proved defective during the first six months after October 20, 1958; (2) that the seller (Payne Implement & Supply Company) failed to carry out the warranty to the defendant pertaining to the tractor in question; (3) that the Payne Implement & Supply Company was an agent for the plaintiff (Minneapolis-Moline Company); (4) that the Payne Implement & Supply Company represented to the defendant that if the tractor was not in good working condition for a period of six months, then the defendant would be furnished all the necessary parts, material and labor by the plaintiff to place the tractor in good working condition; (5) that this representation on the part of Payne Implement & Supply Company induced the defendant to enter into said conditional sales contract; (6) plaintiff failed to place the tractor in good working condition; (7) the sum of $500 is reasonable compensation for the plaintiff's attorneys for services rendered in this case.

Appellee had pled that the dealer, Payne Implement & Supply Company, was the agent of appellant (Minneapolis-Moline Company); developing the facts and circumstances with respect to this issue from Richmond J. Payne, manager of the dealer concern, who stated that his company was operating under a franchise from Minneapolis-Moline Company of Dallas, Texas. Appellant had denied the agency relationship, pleading that at all times material here it had been an independent dealer and independent contractor. A Provision of this franchise contract between appellant and Payne Implement & Supply Company reads: "Dealer not Agent. The Dealer is not the company's agent in any respect or for any purpose and is not authorized to incur any obligations or make any agreement, provisions, warranties or representations in its behalf." On the trial and relevant to the issue of agency, appellant had offered this franchise contract in evidence but same was excluded by the court on ground principally that above quoted provisions of the instrument was self-serving; and appellant asserts court error (1) in refusing to admit into evidence the written contract between Minneapolis-Moline Company and Payne Implement & Supply Company; (2) in submitting issue No. 3 and definition of the word "agent" in connection therewith. Together with Issue No. 3 the jury was instructed "that an agent is one who acts in behalf of another under the latter's authority and for the latter's benefit."

It was error to exclude this franchise contract on the issue of agency. It was properly offered from the testimony of G. A. Wright, credit manager of appellant, identified by him as taken from the company files and indeed the instrument had also been identified by Richmond J. Payne as the contract under which his concern had been operating since 1953. Agency is the creature of contract, either expressed or implied, and if a contract expressly states that no agency relationship is intended, such is conclusive evidence that no agency exists. White Sewing Mach. Co. v. Sneed, Tex.Civ.App., 174 S.W. 950. Appellant further correctly states that issue No. 3 above submits merely a question of law; appellee relying solely on the testimony of Payne, the dealer, to establish any agency in fact: "The question whether an agency relation exists between an alleged principal and agent is a question of law that must be determined solely by the trial court, in the light of the relations of the parties under the agreement between them or in view of their acts and conduct. More specifically, it is the function of the trial court alone to determine whether, under an ascertained state of facts, a legally valid agency relation exists between the parties. The province of the jury in this connection is to determine only whether or not certain facts exists—not whether, if such facts do exist,

they are legally sufficient to constitute the alleged agency." 2 Tex.Jur.2d 694.

■ Since Payne Implement & Supply Company had no actual authority under its franchise with appellant to act as its agent, the only other theory upon which an agency relation could be based, as appellant points out, is that of apparent or ostensible authority, which doctrine is based upon the theory of estoppel, and must be both pled and proven, which appellee failed to do in the case at bar. 2 Tex.Jur.2d "Agency" p. 676. Here the actual facts and circumstances surrounding the relationship existing between Payne Implement & Supply Company and appellant was developed only from its manager, Payne. But "the doctrine cannot be relied on by a third party to charge a principal, unless such a person has been induced to act in good faith on *certain representations made by the principal* * * *. Such (apparent) authority must be determined solely by the principal's acts, and not by those of the agent." 2 Tex.Jur.2d pp. 484, 485. (emphasis ours).

■ Point 3 complains of the court's refusal to admit evidence through the witness Payne with respect to repurchase by appellee for $650 of the 1953 Ford Tractor which had been previously traded by appellee to Payne Implement & Supply Company, along with the breakdown in cost as between the tractor in suit and implements; and point 4 relates to further refusal of court to appellant's offer of evidence concerning purchase by appellee of another tractor by appellee in July 1959 from Workman Implement Company of Tulia, Texas. The bill of exceptions disclosed that out of the total purchase price of $6,550, about $5,000 was the price of tractor and the balance of $1,-550 was for the lister, planter and cultivator. The court had rejected the foregoing testimony; in particular, the breakdown in the cost as between the five star tractor and the implements sold. It was error to exclude the offered testimony under appellee's defense of a "failure of consideration and a

lack of consideration because of the failure of plaintiff, its agents, dealers and representatives to carry out the terms of their agreement." No evidence was offered by appellee of any defects in the implements consisting of lister, planter and cultivator, or of any failure on part of appellant to carry out any warranty as to these items. The testimony was material as tending to show that there could not have been a total failure of consideration; these implements being free of defects, constituting a substantial part of the machinery involved under the one contract of sale.

■ 4 must also be sustained. On cross-examination of defendant, Purser, appellant had sought to develop from him the fact that in July 1959 he had purchased from Workman Implement Company another tractor at a much lower price. The ruling was error, considering the wide latitude of cross-examination in Texas. 44 Tex.Jur. p. 1141. Not only that, but the second purchase was during the time that defendant was complaining about various defects of the tractor in suit, and tended to establish other reasons for his refusal to make further payments on the tractor originally purchased from Payne Implement & Supply Company.

The original transaction between Payne Implement & Supply Company as seller and J. A. Purser as buyer was evidenced by a conditional sales contract stating that "No warranties, expressed or implied, have been made by seller except as set forth here below;" then providing under heading "Warranty" that "The Dealer hereby agrees with and warrants to the Purchaser that (except as hereinafter stated) the Dealer will furnish free a new part to replace any part of each New Minneapolis-Moline tractor or machine or implement bearing the Minneapolis-Moline trade-mark which, with proper use, proves defective during the first six (6) months after delivery of the tractor, or machine, or implement to the original retail purchaser, and will furnish free a new part to replace any part of each new Minneapo-

lis-Moline industrial engine or power unit which, with proper use, proves defective during the first ninety (90) days after delivery of the engine or power unit to the original retail purchaser, provided that the defective part is promptly returned to the dealer, and provided that said part shall, upon inspection, be acknowledged by the Dealer to be defective in material or workmanship. This warranty does not obligate the Dealer when any Minneapolis-Moline tractor, industrial engine or power unit, or machine or implement bearing the Minneapolis-Moline trade-mark has been subjected to negligent handling or use or to abuse, or if parts other than those made or distributed by Minneapolis-Moline Company, were used and, in the opinion of the Dealer, the use of such parts adversely affected the part claimed to be defective, * * *." Not material here were other warranty limitations and exclusions.

In defendant's first amended original answer are detailed allegations of failure of the tractor to properly operate during the first six months of the warranty, alleging generally that "Defendant further show the Court that the power lift, hydraulic system, governor, torque amplifier, power steering and other parts of this tractor have not worked, and did not work properly as agreed upon within approximately three months after the date of delivery to this defendant of the tractor in question. * * that there has been failure of consideration and a lack of consideration because of the failure of the plaintiff, its agents, dealers and representatives, to carry out the terms and provisions of their agreement." It will be noted that there are no allegations by defendant Purser of fraud, accident or mistake.

It will also be noted that appellee's defenses were for breach of warranty; the issues obviously based on testimony of defendant Purser of which the following is typical: "Q All right, sir. Now, after you purchased it in 1958—prior to the time— Let's go before you purchased it. Prior to the time you purchased it, and prior to the

time you signed this contract did you talk with Mr. Payne about the provisions of this contract? A I did. Q Particularly to what provision did you talk with him about, sir? A About the warranty. Q And is that the warranty provision there, sir? A That is. Q All right. Now, tell the Jury what you talked to Mr. Payne about that provision before you signed the contract. A I asked Mr. Payne who was responsible for the working conditions and the reliability of the tractor, who, if anything went wrong with it, who was responsible for it, and would they guarantee it, or what bout it. Q And what did he explain to you, or what did he say to you, Mr. Purser? A Mr. Payne unconditionally guaranteed the tractor to give me complete satisfaction one hundred per cent."

Appellant duly objected to the foregoing questions and answers, asking the court to instruct the jury to disregard them for the reason that same were in violation of the parol evidence rule in that they constituted an attempt to vary the terms of the written contract. The objection was overruled and testimony admitted as to these oral representations made by the dealer Payne. Appellant's points 5, 6, and 7 are here presented; involving above objection, also relating to submission of issues 4 and 5. "In the absence of allegations of fraud, accident or mistake * * *, it will be conclusively presumed that the written contract contained the whole agreement of the parties, and parol evidence of representations, statements or warranties not disclosed by the contract was inadmissible." Avery Co. of Texas v. Harrison, Tex.Com App., 267 S.W. 254, 256. "When the contract is such that it presumptively contains the whole agreement of the parties, or when it expressly purports to do so, evidence of an oral warranty is inadmissible unless it is shown to have been omitted from the writing as a result of accident, fraud or mistake. When a written contract contains an express warranty, evidence of an oral warranty respecting the same subject matter will ordinarily be excluded." 37-A Tex.Jur.

§ 88, p. 225. The trial court should have excluded the quoted testimony of appellee as going beyond the terms of the conditional sales contract. Since appellee had made no allegations of fraud and offered no proof of fraud, the representation made by Payne was nothing more than an oral warranty. " * * * the rule as to the exclusion of parol testimony applies as well to the privies as to the parties to any contract." Daggett v. Corn, Tex.Civ.App., 54 S.W.2d 1098, 1100, and appellant as assignee of Payne Implement & Supply Company, claiming under the contract in question, was in a privy relationship making the parol evidence rule clearly applicable, Daggett v. Corn, supra.

Likewise, Issue 4 was erroneous as pointed out by appellant in its objection thereto. It was to be answered on basis of the oral representations made by Payne to appellee. While Payne was undisputedly the dealer for Minneapolis-Moline Company, appellee throughout these issues has confused the relationship of "dealer" and "agent"; there being no evidence that any agency on part of Payne was thus created as we have already pointed out. As regards this dealership relation, all machinery and parts sold to Payne were to be paid for by the latter within fourteen months. The conditional sales contract on which appellant's suit is brought, was of a required form furnished by Minneapolis-Moline Company. Time payment contracts were to be assigned to it at its regional office in Dallas, where deferred installments were payable.

■■■■■ its points eight and nine appellant complains of Special Issue No. 2: "Do you find from a preponderance of the evidence that the seller under the conditional sales contract failed to carry out its warranty to the defendant pertaining to the tractor in question?" and Special Issue No. 6: "Do you find from a preponderance of the evidence that the plaintiff failed to place the tractor in a good working condition?" We agree with appellant that the submission of these issues constituted error.

It is obvious that issue No. 2 amounts to the submission of a question of law, rather than a question of fact. As worded, the issue permits the jury to speculate as to whether the "Warranty" as used therein means a written warranty or includes the alleged oral warranty asserted by appellee. Assuming that the pleadings in this case will be the same on another trial it is suggested that such issue be confined to the wording of the written warranty itself. Friesenhahn v. Tips Engine Works, Tex. Civ.App., 283 S.W. 341.

[10] ■■■■ No. 6 is too broad and general, presenting a question which is wholly unrelated to any contractual obligation assumed by appellant. It is not confined to either the written warranty or the alleged oral warranty. The written warranty relates only to the replacement of defective parts during the six months period following the sale and there is no obligation to place the tractor in good working condition. The oral warranty, as testified to by Mr. Purser is: "Mr. Payne unconditionally guaranteed the tractor to give me complete satisfaction one hundred per cent." And also: "The warranty guarantee is for any and all operating parts of the tractor or the tractor as a whole for a period of six months after delivery." The issue, as framed, contains no limitations as to time. Such manner of submission is wrong. Schoenberg v. Forrest, Tex.Civ.App., 228 S.W.2d 556; Walton v. Smulcer, Tex.Civ. App., 222 S.W.2d 918. Points eight and nine are sustained.

[11] ■■ its tenth and eleventh points appellant contends that since the trial court rendered a "take nothing" judgment against it that such amounts to a complete recission of the contract and cancellation of the note in question, whereas appellee failed to either allege or prove any theory of defense which would have entitled him to a recission of the contract but, at the most, the defense pleaded would only entitle appellee to a credit of the damages suffered as a result of the breach of warranty. As heretofore

stated, appellee pleaded a defense based upon breach of oral and written warranties by appellant and its alleged agent. The representations alleged and relied upon were to the effect that the tractor in question was guaranteed to appellee's satisfaction and that "any part which did not work properly" would be replaced by appellant in order that the tractor would be placed in a perfect working condition. While failure of consideration was also pleaded defensively the evidence is uncontradicted that there could have been no such failure since the tractor and implements sold were not wholly unsuited for the purpose for which they were designed. No issues were requested by appellee or submitted to the jury relating to either a total or partial failure of consideration and this theory of defense was abandoned.

We agree with appellant that the pleadings and testimony in this case does not warrant a judgment of recission of the contract. The rule in this connection is announced in 37–A Tex.Jur. § 311, pp. 640, 641 and 642 as follows: "In respect of the right to rescind a sales contract for a breach of warranty, when there is no fraud, and the warranty of a subsequently unsuitable article goes to the fitness of the article, it may be returned, and if the warranty goes to the identity of the article which proves to be something different, it may also be returned. But if the warranty goes to the degree of fitness or to quality, and it proves to be of an inferior quality or fitness, the goods cannot be returned. Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but if it only performs them badly the remedy is by action for damages. The fact that some parts may be defective, or that the machine does not perform as guaranteed, does not warrant a recission of the contract, so long as the machine is not wholly worthless.

"This rule appears to be contrary to that prevailing in many other jurisdictions, and has been subjected to some criticism, but it has been enforced very consistently in this State."

In Jesse French Piano & Organ Co. v. Thomas, 36 Tex.Civ.App. 78, 80 S.W. 1063, it was held that proof of breach of warranty does not entitle the vendee of a recission of a sale on the theory that the consideration has failed, since the failure of goods to come up to the seller's warranty is not proof that the goods are wholly worthless. Where the evidence shows that the machine is sold for a particular purpose merely performed its function badly, the courts have held that such does not entitle the purchaser to a recission. In such circumstances his remedy is for damages for a partial failure of consideration. 37–A Tex.Jur. pp. 695–696; Allison Ranch Co. v. Angelo Auto Electric, Inc., Tex.Civ.App., 145 S.W.2d 645; Exchange Bank v. Hensley & Roland, Tex.Civ.App., 240 S.W. 679, 680.

The judgment of the court in this case, denying appellant anything, relieved appellee from further liability for the unpaid balance of the purchase price and also permitted appellee to retain the tractor and implements. The effect of such a judgment is that of both recission and damages and same cannot be sustained on any theory of law. Dillard v. Clutter, Tex.Civ.App., 145 S.W.2d 632, err. ref. Appellant's tenth and eleventh points are sustained.

Appellant contends in his twelfth and thirteenth points that since appellee used the tractor and implements in question long after discovery of the alleged defects and did not legally tender the tractor and implements back to appellant, that it was error to render judgment in effect, rescinding the contract. Furthermore, the judgment of "take nothing" amounts to unjust enrichment of appellee in as much as he is relieved from further obligations to pay for the property which he retains. The record reveals that within a month after purchase of the tractor and implements appellee made known to appellant that the hydraulic system was giving trouble. Never-

theless, appellee continued to use the tractor and implements for approximately two years following the purchase of same. Appellee testified that he had used the tractor for a total of 1200 hours which represents approximately two years use. With reference to return of the machinery, Mr. Purser testified that he had never offered to deliver the tractor back to Mr. Payne. Instead he told Mr. Payne to "come and get it".

■ A buyer desiring to rescind his contract must return the goods he has received. This rule is based upon the proposition that before a recission can be granted the parties must be placed in status quo. "The tender must include not only all the goods received by the buyer from the seller, but also the value of any benefit that he may have derived from the possession." 37–A Tex.Jur. pp. 646, 647. The only evidence of tender is that appellee told appellant to "come and get it". Even if such could be regarded as a "tender", appellant could not have been placed in status quo after the tractor had been used for over two years by appellee.

It cannot be questioned that appellee derived substantial value from the tractor after such prolonged period of use, and we believe, under these circumstances, that appellee was not in a position to say that he was entitled to a recission. In 37–A Tex.Jur. p. 655, the rule is correctly announced that a buyer will be deemed to have ratified the contract and to have waived his right of recission whenever it appears that, after discovering the existence of such right, he has made an extended use of the goods. See also Bancroft v. Emerson-Brantingham Implement, Tex. Civ.App., 194 S.W. 991.

■ We also agree with appellant that the judgment rendered by the trial court in this case results in an unjust enrichment of appellee. The judgment relieves appellee from paying for the tractor and implements and fails to restore said machinery, or any part thereof, to appellant. It has long been the law of this State that a party aggrieved by a fraudulent transaction has an alternative remedy in that he may either rescind or affirm the transaction and recover his damages. He cannot do both. He cannot retain all the benefits of the transaction and escape all the obligations. He cannot rescind the contract in order to escape paying the balance of the consideration due and at the same time affirm it so as to keep the purchased property and recover damages. Talley v. Nalley, Tex.Civ.App., 277 S.W.2d 739; O'Con v. Hightower, Tex.Civ.App., 268 S.W.2d 321, writ ref.; 37–A Tex.Jur. p. 622.

Appellant's points are sustained and the judgment of the trial court is reversed and remanded for a new trial.

Reversed and remanded.

## ON REHEARING

WILLIAMS, Justice.

■ Subsequent to the rendition of our original opinion in this case June 22, 1962, appellant filed its motion for permission to file a supplemental brief containing two additional points of error not theretofore contained in appellant's brief. Appellant cited Rule 431, Texas Rules of Civil Procedure in support of its request. This Rule provides that briefs may be "supplemented at anytime when justice requires upon such reasonable terms as the court may prescribe * * *." This Rule, together with the adjudicated cases, support appellant's contention that after submission and rendition of an opinion, the court may grant leave to file amended briefs including additional points of error not originally presented. Warnasch v. Wagner, Tex.Civ. App., 291 S.W.2d 389; Texas Cities Gas Co. v. Gomez, Tex.Civ.App., 160 S.W.2d 74; Gillette Motor Transport Co. Inc. v. Wichita Falls & Southern Ry. Co., Tex.Civ. App., 170 S.W.2d 629; Old Line Mutual Life Ins. Co. v. Tilger, Tex.Civ.App., 264

S.W.2d 557. Appellant's motion to file supplemental brief is sustained.

By its two points on appeal (being the 14th and 15th points) appellant contends that the trial court erred in overruling its motion for peremptory instruction and also its motion for judgment notwithstanding the verdict of the jury, and calling upon us to reverse and render the judgment of the trial court. We have given careful consideration to appellant's points and once again reviewed the entire record. Having done so we arrived at the conclusion that appellant's points should be overruled. Our previous action in sustaining the various procedural points of error indicate that ends of justice will be better subserved by remanding the case for another trial. London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619; Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699; Godwin v. Texas Employers Ins. Ass'n., 145 Tex. 100, 195 S.W.2d 347; Rule 434, T.R.C.P.

We have also carefully considered appellant's motion for rehearing and finding the same to be without merit, the same is overruled.