**COOPER MACHINERY CORPORATION,**
**Appellant,**

v.

**CIT CORPORATION, Appellee.**

No. 18050.

Court of Civil Appeals of Texas,
Fort Worth.

Feb. 1, 1979.

Atkins & McLarty and Bill Atkins, Arlington, Texas, for appellant.

Johnson, Bromberg, Leeds & Riggs and Alvin H. Badger, Dallas, for appellee.

## OPINION

SPURLOCK, Justice.

Assignor, without recourse, of a conditional sales contract personally guaranteed by two principals of the corporate purchaser under the sales contract, appeals from a judgment against it for breach of warranty. Assignor warranted the genuineness and enforceability of the sales contract and guaranty agreement, and that all signatures, names, addresses, and other facts contained in those contracts are true and correct. The trial court found breaches in several respects. The question presented on appeal is whether, in view of the parol evidence rule, there is evidence supporting the trial court's construction of the warranty clause and findings of breaches thereof.

We reverse and render.

Appellant, Cooper Machinery Corporation, is an equipment dealer in Fort Worth and will be referred to as Machinery. Glen Cooper is Machinery's president and will be referred to as Cooper. CIT Corporation financed the transaction out of which this action arose and will be referred to as CIT. CATCO Construction Company, Inc., is a closely held Texas corporation engaged in the construction business and will be referred to as CATCO. CATCO is the purchaser under the sales contract and is now apparently insolvent. H. E. Kearley, Jr., also known as Gene Kearley, is CATCO's president and will be referred to as Kearley, Jr. H. E. Kearley, Sr., is Kearley, Jr.'s father and will be referred to as Kearley, Sr. Tommy Blankenship is one of CATCO's principals and will be referred to as Blankenship.

This action involves the execution of three written contracts: (1) a conditional sales contract, (2) a guaranty agreement providing for the personal guaranty thereof, and (3) an agreement assigning all rights under the previous two agreements and containing the warranty which was allegedly breached. The dispute centers around the signature "H. E. Kearley" on the sales contract and guaranty agreement. The problem is that Machinery and CIT, believed that Kearley, Sr., had signed the contracts as CATCO's president. Kearley, Jr., actually signed the contracts.

Kearley, Jr., on behalf of CATCO, negotiated with Machinery for the purchase of some paving equipment. CATCO had previously employed a subcontractor to do its paving and wanted to avoid losing profit by doing its own paving. Machinery was willing to enter into a conditional sales contract with CATCO if it could find someone to finance the sale by accepting an assignment of the sales contract. CIT had previously financed some sales for Machinery in this manner and Cooper contacted CIT inquiring if it would finance the sale to CATCO.

After checking CATCO's credit, CIT agreed to accept the assignment on the conditions that CATCO make a down payment of ten percent of the contract price, and that two of CATCO's principals would personally guarantee the sales contract. CIT named Kearley, Sr., and Blankenship as the CATCO principals it wanted to make the guarantee. CIT furnished Cooper with printed forms for the contracts to be executed, with the information it wanted to have included therein penciled on another set of forms as a guide. A Machinery employee prepared the documents actually executed by typing the penciled information in the appropriate blank spaces on the printed forms supplied by CIT.

The sales, guaranty, and assignment contracts were all executed without any problems being recognized. After making several payments on the sales contract, CATCO defaulted. With Machinery's knowledge and assistance, CIT repossessed the equipment and sold it at a foreclosure sale. The sale resulted in a deficiency in excess of $15,000.00. CIT brought action against

CATCO, Kearley, Sr., Kearley, Jr., Blankenship, and Machinery.

CIT's action against Kearley, Jr., was severed before trial. He has not been served with citation because his whereabouts were and continue to be unknown. The action against CATCO was severed at the end of the trial before judgment. CIT had attempted to serve CATCO by serving Kearley, Sr., who it thought was CATCO's president. The evidence established that Kearley, Sr., is in no way connected with CATCO. Therefore, CATCO had not been properly served. The action against Kearley, Sr., and Blankenship is on the guaranty agreement. The action against Machinery is on an alleged breach of warranty covering the sales contract and guaranty agreement contained in its assignment contract with CIT. No theory of fraud was involved in the trial nor on appeal. Further, no question of any agency relationship between Kearley, Sr., and Kearley, Jr., has been raised.

The trial court, without a jury, rendered judgment that CIT take nothing against Kearley, Sr.; that Blankenship is liable on his guaranty of the sale contract; and that Machinery is liable for breach of warranty. Machinery is the only party appealing. The parts of the judgment concerning Kearley, Sr., and Blankenship are final and need not be noticed. Further, we find it unnecessary to fully discuss any of Machinery's points of error except those relating to breach of warranty. However, we will make the following brief remarks about two of these other points.

■ Machinery claims the trial court erred in severing CATCO prior to judgment while rendering judgment jointly and severally against it and Blankenship because CATCO is the principal obligor on the sales contract. Machinery correctly states the general rule that usually a party must maintain an action against the principal obligor to be able to obtain judgment against a party secondarily liable, with certain exceptions, none of which apply. We find this rule inapplicable as to Machinery because judgment was rendered against it for breach of its warranty rather than on any theory of liability on the sales contract or guaranty agreement. CIT has never claimed that Machinery is secondarily liable on either of these contracts. Therefore, Machinery's point of error no. 1 is without merit and is overruled.

■ Machinery also complains CIT failed to request or demand that it repurchase the sales contract which it claims is a condition precedent to liability for breach of warranty. The record reflects that while CIT informed Machinery it *might* be asked to honor its promise to repurchase, this was never actually demanded. CIT claims that filing suit against Machinery alleging breach of warranty is sufficient demand for Machinery to honor its promises. We agree. Since there was no form for the request or demand specified in the assignment contract, we believe that suit upon allegation of breach of warranty was sufficient to put Machinery on notice that CIT wanted it to repurchase the sales contract or settle with CIT on some other remedy. We therefore overrule Machinery's point of error no. 2 on condition precedent.

Machinery attacks the trial court's findings and conclusions pertinent to breach of warranty by numerous points of error. These complain there is no evidence or insufficient evidence to support the court's judgment that Machinery breached its warranty. To decide this question it is necessary to review the details of the agreements of the parties and the evidence of the transaction.

The contract assigning Machinery's right under the sales contract and guaranty agreement was without recourse as to CATCO's ability to pay under the sales contract. However, it contained the following warranty:

"Assignor warrants that: the contract and any accompanying notes, guaranties, waivers and/or other instruments are

genuine, enforceable, the only contract and notes executed concerning the property described in the contract and are and will continue free from defenses, set-offs and counterclaims; all signatures, names, addresses, amounts and other statements and facts contained therein are true and correct; . . . ."

In order to properly construe this warranty clause we must discuss the transaction to which it applies in more detail.

The record reflects when CATCO was incorporated on March 5, 1973, Kearley, Jr., signed his father's name, H. E. Kearley, Sr., on the articles of incorporation as an incorporator. Therefore, the articles could infer that Kearley, Sr., is one of CATCO's principals. Cooper testified that a man known to him only as Gene Kearley negotiated for the equipment purchase on behalf of CATCO. Later Cooper discovered that Gene Kearley is H. E. Kearley, Jr. Cooper further testified that Kearley, Jr., indicated that his father was president of CATCO. He gave Cooper the name of H. E. Kearley (without any Junior or Senior designation) as CATCO's president and an address 1005 E. Elm, P. O. Box 779, Hillsboro, Texas. It is disputed whether this was intended to be a business address for CATCO or Kearley, Sr.'s residence. Kearley, Jr., also gave Cooper a list of credit references for CATCO.

Cooper forwarded all this information to CIT. CIT made a credit investigation of CATCO. It received several credit reports. Taken together, these indicate that Kearley, Sr., is CATCO's president and Kearley, Jr., is its general manager. CIT obtained a financial statement from Blankenship. No such financial statement on Kearley, Sr., appears in the record. However, one credit report on him as an individual does appear. It fails to reveal a history of credit transactions anywhere near as large as this transaction. The largest amount financed according to the report is $2,750.00. The total contract price of this transaction is in excess of $46,000.00.

When CIT notified Cooper that it would finance the sale if two of CATCO's principals would personally guarantee the contract, it named Kearley, Sr., and Blankenship. It is disputed whether CIT actually named Kearley, Sr., or merely indicated H. E. Kearley (without any Junior or Senior designation). However, the record is quite clear that at this time both Cooper and CIT believed Kearley, Sr., was the president.

Although CIT furnished Cooper with the contract forms and information to be included, it was Cooper's responsibility to prepare the contracts and have them executed. The guaranty agreement is printed on the reverse side of the conditional sales contract. The assignment contract is on a separate form.

After a Machinery employee had prepared the instruments, Kearley, Jr., obtained them from Cooper and indicated to Cooper that he would take them to Hillsboro to have his father sign them. Kearley, Jr., returned the instruments to Cooper. They bore the signature "H. E. Kearley" (without any Junior or Senior designation) on the appropriate signature lines. On the conditional sales contract the signature was on the line designated for the corporate representative signing on behalf of the corporate purchaser. On the guaranty agreement the signature is on a line designated for an individual guarantor. In addition, on the sales contract the title of president is handwritten next to the signature. It appears that the same individual signed both the sales contract and guaranty agreement.

Cooper accepted the instrument from Kearley, Jr., without question. Later, without Kearley, Jr., being present, Blankenship executed the guaranty agreement by signing it just below the signature of Kearley. Then Cooper executed the assignment agreement on behalf of Machinery. No CIT representative was present when Blankenship and Cooper executed the contracts. CIT accepted all of these instruments without question.

After making several payments, CATCO defaulted. Upon attempting to collect under the contracts CIT discovered there was some question about which Kearley signed

the contracts and about who was CATCO's president. The trial court found that Kearley, Jr., is CATCO's president; that he actually signed the contracts; and that he does not reside at the Hillsboro address he gave to Cooper. The trial court also found that Kearley, Sr., is not CATCO's president; did not sign or have any knowledge about the contracts; and does, reside at 1005 E. Elm in Hillsboro. The court found that Machinery tendered the contracts to CIT with the belief and representation that Kearley, Sr., had signed those instruments. It found that CIT had accepted them with the belief that Kearley, Sr., had signed as CATCO's president.

Based on these facts, the court found that Machinery breached its warranty of the sales contract in two respects, and breached its warrant of the guaranty agreement in one respect. As to the sales contract the court found as follows:

"12. Defendant Cooper Machinery Company breached its warranty as to the genuineness and correctness of all names, addresses, and other statements of facts contained in the conditional sales contract in the following respects:

"a. That the H. E. Kearley who signed the conditional sales contract does not live at 1005 E. Elm, Hillsboro, Texas, as represented thereon.

"b. That the H. E. Kearley who resided at 1005 E. Elm Hillsboro, Texas, was not the President of CATCO Construction Company, as represented thereon."

It is Machinery's position that even though it and CIT were mutually mistaken about which Kearley was president and signed the contracts, it did not represent that Kearley, Sr., was president or had signed the sales contract on the face of that contract. It argues that the manner in which CIT's forms were drafted limits the representations which are covered by its warranty only to those appearing on the faces of the contracts. Further, it asserts there is no other evidence which can be

properly considered of any such representations. We agree with Machinery's argument.

Note that the warranty in this case is a written warranty. Written warranties must be construed and applied as written. No evidence of any other oral or implied warranties can be considered under the parol evidence rule. *Minneapolis-Moline Company v. Purser,* 361 S.W.2d 239 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). The parol evidence rule is not a rule of evidence but is a rule of substantive law. 2 C. McCormick & R. Ray, Texas Evidence § 1601 (2d ed. 1956). Therefore, even though evidence that Cooper made oral representations to CIT during his negotiations with it prior to the execution of the written contracts in question was admitted without objection, we cannot consider this evidence upon review. Thus the warranty clause warrants only those signatures, names, addresses, and facts contained in the sales contract and guaranty agreement. Note that the sales contract provides, "[n]o oral agreement, guaranty, promise, representation or warranty shall be binding." Therefore, we conclude that only the representations on the face of the sales contract and guaranty agreement under the facts and pleadings in this case are covered by the warranty as written. Thus, that which the parties believed to be true is not necessarily what was represented and warranted by the contracts as written and executed.

Because the trial court found breaches of warranty in that the Kearley who signed that contract (Kearley, Jr.) does not live at the Hillsboro address, and the Kearley who does reside there (Kearley, Sr.) is not CATCO's president, the question is raised whether the sales contract represents that any particular Kearley lives at the Hillsboro address or is president of CATCO. After carefully examining the sales contract we find no express representation therein of either of these facts. The only portion of the contract where the name Kearley, title of president, and the Hillsboro address appears is in the signature

block for the execution of the contract by a corporate representative on behalf of the corporate purchaser, CATCO. It appears on the contract as follows:

"Debtor" <u>Catco</u> <u>Construction</u> <u>Co.</u>, <u>Inc.</u> (typewritten)
   "(Name of individual, corporation or partnership)"

"By" <u>H.</u> <u>E.</u> <u>Kearley</u> (handwritten)   "Title" <u>President</u> (handwritten)
   "(If corporation, have signed by President, Vice-President or Treasurer, and give official title. If owner or partner, state which.)"

<u>1005</u> <u>E.</u> <u>Elm</u>   (<u>P.</u> <u>O.</u> <u>Box</u> <u>779</u>)   (typewritten)
   "(Sreet Address)"

<u>Hillsboro,</u>   <u>Hill,</u>   <u>Texas</u>   <u>76645</u>   (typewritten)
   "(City, County and State)"
"Show place of business in state where collateral located." *

---

Note that below the line for the city, county and state an instruction for execution of the contract is printed on the form: "Show place of business in state where collateral located." We believe this instruction for execution of the contract requires that CATCO's business address be included on the contract. Therefore, it is our opinion that no where on the face of the contract is there a representation that any Kearley resides at any address. While there is evidence that Cooper informed CIT that Kearley, Sr., lived at the Hillsboro address, this evidence is not properly considered under the parol evidence rule as discussed above. Because there is no representation that the Kearley who signed that contract lives at any address, there can be no breach of warranty concerning the place of his residence. Therefore, the trial court erred in finding a breach in this regard.

Just as there is no express representation concerning the residence of any Kearley, we find no express representation that Kearley, Sr., is CATCO's president. Looking again to the signature block of the sales contract we find only "H. E. Kearley" (without any Junior or Senior designation) and the title "President" handwritten next to the signature. It is CIT's position that, since Cooper had orally informed it that Kearley, Sr., was the president and lived at the Hillsboro address, the signature on the sales contract together with the Hillsboro address is a representation that Kearley, Sr., is the president and signed the contract.

It argues that, since Kearley, Jr., signed the contract, Machinery breached its warrant of the genuineness of the signature and the truth and correctness of the names, addresses, and facts thereon. We do not agree.

There is ample evidence in the record that both Machinery and CIT were mutually mistaken about which Kearley was president. We may assume, without deciding, that Kearley, Jr., mislead Cooper by representing that his father, and not he, was CATCO's president. Further, Kearley, Jr.'s, failure to include a Junior designation with his name when he signed the contract may be assumed to be misleading. There is also evidence that when Cooper forwarded the information he had received about CATCO from Kearley, Jr., to CIT, he represented that Kearley, Sr., was president. However, Cooper's oral representations to CIT cannot be considered under the parol evidence rule because of the manner in which CIT's own forms are drafted, as previously discussed.

We construe the written warranty to represent that the signatures are genuine. That is, the person whose signature appears on the contract is the person who actually executed the contract. Further, that all the names, addresses, and facts in the contract are true and correct. That is, the person who executed the contract actually possessed the capacity in which the execution was made, and that the contract was executed for the purpose therein stated.

---

* Quotation marks indicate matter printed on the contract form. Other matter is typewritten or handwritten as indicated in parenthesis.

■ Applying the warranty as construed to the facts, we find that Kearley, Jr., signed the contract on behalf of CATCO. Kearley, Jr., is CATCO's president and signed his own name. There is no evidence that he executed the sales contract for any purpose other than for the purchase of the equipment upon the terms contained in the contract. Therefore, since there is no representation that Kearley, Sr., is the president, and, in light of our construction of the warranty clause as applied to the facts, it is our opinion that no breach of warranty has been shown. The trial court erred in finding that Machinery breached its warranty of the sales contract. We must now consider the guaranty agreement.

■ The trial court made the following conclusion regarding the guaranty agreement:

"13. Defendant Cooper Machinery Company breached its warranty as to the genuineness and enforceability of the guaranty of H. E. Kearley, Sr."

After reviewing the guaranty agreement we find no express representation that Kearley, Sr., would guarantee the sales contract. The only reference to Kearley is the signature "H. E. Kearley" (without any Junior or Senior designation) on a signature line in the guaranty agreement designated for an individual guarantor. CIT relies on the same oral representations Cooper allegedly made as it did regarding the sales contract. For the reasons stated above, these representations cannot be considered.

■ As applied to the guaranty agreement, we construe the warranty clause as representing that the person whose signature appears on the agreement actually signed it; that such person actually possessed the capacity in which he signed; that it was executed for the purpose therein stated, and therefore, it is enforceable against the person who executed it. As applied to the facts, Kearley, Jr., signed his name to the guaranty. He is CATCO's president, and there is no evidence that he did not sign it for the purpose of personally guaranteeing the sales contract. Therefore, we find no breach of warranty.

We believe this construction of the warranty of the guaranty agreement is correct especially in light of what the parties bargained for and actually received. What CIT bargained for is expressed in the testimony of one of its employees.

"Q. As I understand the position of CIT, it would be a fair statement to say that CIT was interested in having the principals of CATCO, at least two principals of CATCO, endorse this note and signed it as guarantors. Would that be a true statement?

"A. Yes.

"Q. And were (sic) CIT particularly interested in getting anyone outside of CIT—outside of CATCO to sign as guarantors?

"A. I don't believe so. I don't believe we were interested in anybody that was not a principal of CATCO.

"Q. So you were interested in the president and one of the officers signing this particular instrument?

"A. Since it was a relatively new corporation and a closely held corporation, we were interested in all of the principals guaranteeing the transaction."

This clearly indicates that CIT bargained for the personal guarantee of individuals that were principals of CATCO. But for their being one of CATCO's principals, CIT had no interest in, nor did it bargain for, the endorsement of any other individuals. Therefore, when it conditioned acceptance of the assignment on the personal guaranty of Kearley, Sr. and Blankenship, what CIT really wanted was the personal guaranty of two of CATCO's principals. In warranting the enforceability of the guaranty, Machinery warranted that the person who signed the guaranty agreement as a principal of CATCO actually was a principal. Therefore, because Kearley, Jr., is a principal and executed the guaranty agreement as such, CIT actually received what it bargained for and what Machinery warranted. Therefore, the trial court erred in concluding that Machinery breached its warranty as to the enforceability of the guaranty agreement against Kearley, Sr.

Although not all of the appellant's points of error have been discussed, each has been severally considered and unless otherwise indicated above, each is overruled. There is no evidence which can properly be considered supporting the trial court's finding of breaches of warranty of the sales contract, and its conclusion of breach of warranty of the guaranty agreement. Therefore, the trial court erred in rendering judgment against the appellant for breach of warranty.

The portion of the trial court's judgment relating to appellant, Cooper Machinery Corporation, is reversed and judgment is rendered that appellee take nothing against that appellant.